1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - - - - - -X
 3  SUENG-YONG OK,              : 18-CV-392 (BMC)
                                :
 4          Plaintiff,          :
                                :
 5       -against-             : United States Courthouse
                                : Brooklyn, New York
 6  NEW YORK CITY DEPARTMENT OF  :
    EDUCATION, ET AL.,          :
 7                              : Friday, April 6, 2018
            Defendants.         : 11:30 a.m.
 8  - - - - - - - - - - - - - - - -X

 9

10

11                TRANSCRIPT OF CIVIL CAUSE
                       FOR CONFERENCE
             BEFORE THE HONORABLE BRIAN M. COGAN
12                UNITED STATES DISTRICT JUDGE

13

14            A P P E A R A N C E S :

15  For the Plaintiff:      GLASS HOGROGIAN, LLP
                            100 Church Street
16                          8th Floor
                            New York, New York 10007
17                          BY:  BRYAN D. GLASS, ESQ.

18
    For the Defendants:     NEW YORK CITY LAW DEPARTMENT
19                          100 Church Street
                            New York, New York 10007
20                          BY:  CASSANDRA N. BRANCH, ESQ.

21

22  Court Reporter:         DAVID R. ROY, RPR
                            225 Cadman Plaza East
23                          Brooklyn, New York 11201
                            drroyofcr@gmail.com
24
    Proceedings recorded by Stenographic machine shorthand,
25  transcript produced by Computer-Assisted Transcription.
```

```
                     Proceedings                        2
```

1          (In open court.)

2          THE COURTROOM DEPUTY:  Ok versus New York City

3    Department of Ed., et al., Docket Number 18-CV-392.

4          Counsel, please state your appearances starting

5    with the plaintiff.

6          MR. GLASS:  My name is Bryan Glass, and I have to

7    my left Mr. Ok, the plaintiff.

8          THE COURT:  Okay.  Good morning.

9          THE PLAINTIFF:  Good morning.

10         MS. BRANCH:  Your Honor, Cassandra Branch for

11   Defendants New York City Department of Education, Mr. Amaya,

12   and Mr. Chin.

13         THE COURT:  Okay.  Ms. Branch, you are not

14   understanding me.

15         MS. BRANCH:  Okay.  I'm sorry, Your Honor?

16         THE COURT:  You have to think, Why does the judge

17   want a communication from me about the case or the Rule 16

18   conference?

19         MS. BRANCH:  Yes.

20         THE COURT:  Obviously, your first response to my

21   request for a submission, a list of denials and affirmative

22   defenses, that does not help me understand your view of the

23   case.

24         MS. BRANCH:  I understand that, Your Honor.

25         THE COURT:  Okay.  So then you sent me the second

Proceedings                                    3

1   letter.

2              MS. BRANCH:  Yes.

3              THE COURT:  The second letter really also does not

4   help me understand your view of the case.  It suggests to me

5   that instead of talking to your client, Mr. Chin --

6              MS. BRANCH:  Yes.

7              THE COURT:  -- and finding out what happened here

8   between him and the plaintiff and telling me his version of

9   the story, you did not even call Mr. Chin.

10             MS. BRANCH:  Oh, no, I did.  I'm sorry.

11             THE COURT:  Okay.  Well, what is his -- this is

12   what I want to know:  What is his version of what went wrong

13   between them?  I have the plaintiff's version.  I do not

14   have his version.  You just sent me a letter saying, I have

15   read the complaint, and I think I may have legal challenges

16   to the face of the complaint.  That does not help me in

17   planning discovery or understanding the case.  So help me

18   understand the case.

19             MS. BRANCH:  Okay.  I apologize again, Your Honor.

20   I definitely did call Mr. Chin.  I spoke to him extensively

21   actually, in person, so --

22             THE COURT:  You acknowledge, I would not know that

23   from your letter, right?

24             MS. BRANCH:  Yes.

25             THE COURT:  Okay.  So tell me, what is the store?

Proceedings                                         4

1        MS. BRANCH:  There are a lot of allegations and

2   complaint, so I would first ask Your Honor if you would like

3   me to go through them chronologically or just give me the

4   steps --

5        THE COURT:  No, I want you to go through them not

6   at all.  I want you to tell me what is Mr. Chin's story.

7   Why does he have difficulty with this plaintiff?

8        MS. BRANCH:  Well, Your Honor, there are a lot of

9   things, frankly, that are left unsaid in the complaint.

10  Let's start there.

11       THE COURT:  Those are the things I want to hear

12  from you.

13       MS. BRANCH:  Okay.  So there are a lot of things

14  left unsaid in the complaint.

15       There were a number of email communications

16  between the plaintiff and Mr. Chin that included other

17  individuals in the school, mainly in the school white

18  females that you are seeing referenced in the letter in the

19  complaint.  In these various emails, Mr. Chin would email

20  about, for instance, a schoolwide change in policy or a

21  schoolwide event to which Mr. Chin many occasions would

22  respond not only addressing whatever the announcement was,

23  but lodging personal complaints against Mr. Chin and his

24  colleagues and other individuals who had little or nothing

25  to do at all with the original content of the email.

Proceedings                                          5

1         Mr. Chin ignored these statements from the

2   plaintiff and at the end of the, what is it, so the

3   2015/2016 school year still approved Mr. Ok effective or

4   highly effective I believe rating for that school year.

5         When I spoke to Mr. Chin, he said that the reason

6   that he did that is because while at that point, he had only

7   been in the school for a year and this particular school, by

8   the way, is one that has seen many principals, seven or

9   eight, in the last ten years.  So at the end of the first

10  school year, Mr. Chin still gave Mr. Ok a positive rating

11  because it wasn't an issue with having to do directly with

12  the classroom or with his performance.  So the second year

13  came around and there were even more issues.  Now, Mr. Chin

14  actually only evaluated -- directly evaluated one of the

15  lessons once himself, the rest of the evaluations were

16  performed by the assistant principal who was in charge of

17  the science department.

18         THE COURT:  And were those negative performance

19  evaluations?

20         MS. BRANCH:  Not in whole.  There are 22

21  components on an evaluation, so some of them were positive

22  and then some components were negative.  It boils down to a

23  numeric computation at the end, right?

24         So the evaluations were mostly performed by

25  Mr. Maya and Chin did one of them.  At the end of the school

Proceedings                                     6

1    year, Mr. Ok had a, I believe there was a developing rating,

2    because again, it is calculated by the numbers.  There is no

3    discussion of exercise by the principal at that time.

4              THE COURT:  Where is developing on the scale of A

5    through D?

6              MS. BRANCH:  So it starts as highly effective.

7    Next is effective.  And then next would be developing.  And

8    then next would be ineffective.

9              THE COURT:  Got it.  Okay.

10             MS. BRANCH:  So during that school year there were

11   several parent/teacher conferences.  They were faculty

12   meetings.  There were a lot of complaints by colleagues of

13   Mr. Ok's to the principal to SEI.  SEI is the school-based

14   investigation -- school special commission of investigation.

15   And then there's also the DOE's office of special

16   investigation, which really is a larger unit.  OSI did an

17   investigation following all the complaints about Mr. Ok, and

18   it was a substantial investigation that lasted several

19   months, actually.  And by the way, Mr. Chin was the one who

20   submitted those complaints by the other teachers and

21   colleagues to OSI, because at that point, he had had enough

22   of the insubordination and the rude comments.  There were

23   personal attacks on other teachers.  They frequently

24   requested for Mr. Ok to stop and please disclude [sic] us

25   from all of your emails and your personal matters, and he

Proceedings                                     7

1   blatantly refused and replied to the e-mail, I will not
2   basically.  It's your problem.  If you don't want to look at
3   it, delete the email.  So OSI did find that Mr. Ok was in
4   violation of many rules and had acted egregiously and
5   inappropriately, and they recommended that his capability
6   with respect to DOE emails, meaning replied all and being
7   included on some lists, should be removed.  And they
8   actually recommended that he be terminated.  So it wasn't
9   until several months later that Mr. Chin actually decided to
10  recommend the determination that had been recommended by the
11  office of special investigation.  So we're at the point now
12  where there were charges, disciplinary charges filed against
13  Mr. Ok under 3020-A, and those disciplinary charges, I
14  believe, there were four or five specifications, including
15  some of the emails exchanges.  It referenced Mr. Ok's
16  behavior during a specific parent/teacher conference.  That
17  was the parent/teacher conference which I believe in the
18  complaint he alleges that he was told -- that he discussed a
19  bullying incident.  So during that particular conference,
20  the specification discussed how Mr. Ok was giving parents
21  his personal cell phone numbers, telling them to call him
22  personally and talk about what was really going on in the
23  school, to phrase, and other things such as telling the
24  parents that kids were being passed through along the grades
25  without any consideration for whether they should really be

Proceedings                              8

1    going further in their education.

2              So Mr. Ok was removed from the school, and that is

3    not something unique to Mr. Ok's case.  Anytime a teacher is

4    charged with --

5              THE COURT:  When you say "removed," that means

6    like suspended pending the final determination of the

7    charges?

8              MS. BRANCH:  Correct.  Teachers are always

9    technically suspended from their teaching duty with pay, and

10   there is what is referred to as the -- it's an alternative

11   teaching center, right, so all of the teaches go there.

12   There are multiple locations throughout some of the

13   boroughs.

14             THE COURT:  Is that what they call the rubber

15   room?

16             MS. BRANCH:  No, those are two different things.

17             THE COURT:  Okay.

18             MS. BRANCH:  This is for teachers who are pending

19   charges.  I believe the rubber room is something different.

20             THE COURT:  Okay.

21             MS. BRANCH:  But the charges are still pending,

22   and the DOE is preparing to go forward with the 3020-A

23   proceeding, so that is something that will be happened in

24   the near future.  But in the meanwhile, yes, Mr. Ok is not

25   currently teaching, and every other teacher who is charged

Proceedings                                    9

1   with 3020-A goes through the same.  So I believe that takes

2   us to the end.

3             THE COURT:  Okay.  That is good.  This is what I

4   needed.

5             MS. BRANCH:  I apologize again.

6             THE COURT:  Tell me if you know, and there is no

7   reason that you would have to know this, who was the

8   principal person for OSI that did the investigation?

9             MS. BRANCH:  There were two investigators.  I

10  didn't bring the actual paper with me because I received it

11  really recently, but one of them is mentioned in the

12  complaint.  Give me a moment.  I do know that there were two

13  investigators, but one was principally heading it.

14            THE COURT:  Okay.

15            MS. BRANCH:  I believe it was -- I don't have his

16  name.  I'm sorry.

17            THE COURT:  Okay.  Let me just revert to the

18  plaintiff for just one second.  I have one question.

19            I take it that it is your contention that the

20  investigators were being pushed along to a result by Chin;

21  is that right?

22            MR. GLASS:  Absolutely.

23            THE COURT:  Okay.  I just want to make sure that

24  was the case.

25            Do you know how much interaction there was between

Proceedings                                      10

1   the investigators and Chin as opposed to investigators and

2   other people who had run-ins with the plaintiff?

3           MS. BRANCH:  They're an independent office.  They

4   communicated with him only one or twice, and that was only

5   for the purpose of setting up an interview with Mr. Chin.

6   They are not -- interviewees are told what each other has to

7   say about the case and they are told not to talk to each

8   about the case until OSI is completed.

9           THE COURT:  Okay.  Do you have any information on

10  how many people they talked to as part of their

11  investigation.

12          MS. BRANCH:  From my recollection of reading the

13  report, there were at least five individuals.

14          THE COURT:  Okay.  And just on the off chance you

15  have this, again, there is no reason you should, you do not

16  happen to have the file of emails with you, do you?

17          MS. BRANCH:  No.

18          THE COURT:  Okay.

19          MS. BRANCH:  No.  I have been receiving some of

20  them, but I definitely do not have a file.  I have a good

21  number, but I'm sure there are more, because there are many

22  referenced in the complaint that I do not have.

23          THE COURT:  Okay.  I do not really need to hear

24  from the plaintiff because I understand your side of the

25  case.  I take it what you are effectively saying is because

Proceedings                                    11

1   he made this complaint about the passing rate, Chin was out

2   to get him because it was hurting his school and did all

3   these things to end his career, essentially, right?

4            MR. GLASS:  Yeah, I would like to mention.

5            THE COURT:  Go ahead.

6            MR. GLASS:  Now, Principal Chin has actually been

7   removed himself.  He's under investigation.

8            THE COURT:  No, I say that.  I am not sure that is

9   relevant.

10           MR. GLASS:  Well --

11           THE COURT:  I mean, I am not even sure it is

12  admissible.  Why was he removed; was he stealing money?

13           MR. GLASS:  That might be part of it.

14           MS. BRANCH:  No.

15           MR. GLASS:  They haven't disclosure the reasons

16  yet.  The DOE has not fully disclosed the reasons.  But he's

17  sitting in the same reassignment center as Mr. Ok now three

18  days after removing Mr. Ok.

19           THE COURT:  Maybe they can settle the case?

20           MR. GLASS:  I'm sorry?

21           THE COURT:  Maybe they can settle the case?

22           MR. GLASS:  That would be nice.  Well, he'd be

23  happy to settle it, but unfortunately, you know, Mr. Chin

24  has put motions in an attempt to get Mr. Ok fired, and

25  that's what we're facing now, unfortunately.

Proceedings                                    12

1              THE COURT:  Okay.  But why would I not wait on

2    this case until after the hearing on the charges?  Maybe he

3    will be exonerated, which will change his claim; maybe he

4    will not be exonerated, and he will be terminated, which

5    would be a hurdle for you to overcome, wouldn't it?

6              MR. GLASS:  It would make it more difficult, no

7    question, but...

8              THE COURT:  I take it ultimately these charges are

9    heard by a neutral; are they heard by the Oath Department?

10             MS. BRANCH:  No.  No, they're heard by an

11   arbitrator under the union and the DOE's collective

12   bargaining agreement.

13             THE COURT:  Okay.

14             MR. GLASS:  What it is is there's a panel that's

15   appointed jointly by the parties, and he doesn't have the

16   selection of the arbitrator.

17             THE COURT:  Right.

18             MR. GLASS:  He's given the arbitrator.

19             THE COURT:  Well, yeah.  But I assume that the DOE

20   also does not pick the arbitrator --

21             MS. BRANCH:  No.

22             THE COURT:  -- right?

23             MR. GLASS:  Well, it's a panel of about 12

24   arbitrators, and they have a rotating system of assignments

25   and so...

Proceedings                                          13

1          THE COURT:  But is there any distinction -- tell

2     me if you know this case.  Do you know the case of *Collins*

3     *against New York City Transit Authority?*

4          MS. BRANCH:  I don't believe so.

5          THE COURT:  It is a Second Circuit case, and

6     basically what it says is is if there is a hearing pursuant

7     to a CVA by a neutral, and it comes out against the

8     plaintiff, that it is a very difficult hurdle for the

9     plaintiff to overcome, because it is a neutral, and if the

10    neutral finds that there was cause for the termination -- it

11    is not like collateral estoppel or anything -- but it makes

12    it very difficult for the plaintiff to get to the third

13    stage of the *McDonnell Douglas* test.

14         MR. GLASS:  I also believe there's a

15    Second Circuit case called *Leon* that came out in the last

16    few years that suggested even if a teacher was terminated,

17    if they could prove that there was a retaliatory motive

18    behind the charges, the case could proceed.  Now, of course,

19    there's a hurdle --

20         THE COURT:  Yes, I do not doubt that.  I am sure

21    that is right.

22         MR. GLASS:  Yeah, I mean, of course, there is a

23    hurdle, obviously.  If he's terminated, it's a harder burden

24    for us, no question.  But I think that should necessarily

25    preclude us from proceeding with discovery.  I mean, I do

Proceedings                                             14

1   feel like this -- what seems like what's unusual about this

2   case is the charges seem to be basically because of his

3   speech, I mean, and there may be some questions of what --

4            THE COURT:  Okay.  But you acknowledge that there

5   is some amount of speech, even assuming arguendo, that it is

6   a matter of public importance, not within his job; but there

7   could be too much speech, right?  You can make it impossible

8   to do your job by constantly -- and I am not saying he did

9   this -- but by constantly harassing people with emails?  If

10  that is what the proof shows, then that might form a ground

11  for disciplinary action, even if the original substance of

12  the first email was First Amendment activity, right?  That

13  could happen.

14           MR. GLASS:  Well, it could be a balancing.  Yes, I

15  believe that there could be a point that it's harassing.

16  But I think the principal was basically sort of harassing --

17  you know, he's being characterized as being harassed.  I

18  think if you read our allegation, these aren't even

19  legitimate complaints, and Mr. Chin is trying to, you know,

20  stop the spring from leaking about the fraud allegation.

21           THE COURT:  Okay.

22           MR. GLASS:  And so if they're turning this into,

23  yes, because -- and they're turning these people against

24  him, recruited -- you know, there are -- if you want to know

25  the true story of what we believe happened, I mean, we feel

```
                          Proceedings                    15

 1    like we recruited people that fear his own wrath of

 2    retaliation by saying Mr. Ok was doing all these terrible

 3    things and harassing them, when that wasn't the case, and we

 4    have witnesses and we'll evidence to show that, in fact,

 5    this was all Chin creating a screen to try to protect

 6    himself from legitimate allegations of fraud and misconduct.

 7              THE COURT:  Who are your witnesses and what are

 8    they going to say?

 9              MR. GLASS:  We have several witnesses, including

10    the people they listed in one of the charges, the 3020-A

11    charges?  They're willing to say that this -- they had no

12    problem with Mr. Ok.  This is Mr. Chin's pressuring them.

13              THE COURT:  Well, they will not be able to say the

14    later, right?  They can describe that they had no problem

15    with Mr. Ok.  They can describe what Mr. Chin said to them

16    about Mr. Ok --

17              MR. GLASS:  Correct.

18              THE COURT:  -- but they cannot draw the conclusion

19    that I think Mr. Chin was unreasonably pressuring Mr. Ok,

20    they cannot say that.

21              MR. GLASS:  I mean, he has 30 teachers here on a

22    witness list saying that, you know, they felt that

23    Mr. Chin -- they witnessed Mr. Chin masterminding campaigns

24    to discredit him.  He has a petition here of 30 people.

25              THE COURT:  Okay.  Yes, but that is not admissible
```

Proceedings                                    16

1   in court.

2              MR. GLASS:  Understood.  But, look --

3              THE COURT:  Are you going to take.

4              MR. GLASS:  -- I don't know how much -- I'm sorry?

5              THE COURT:  Are you going to take 30 depositions?

6              MR. GLASS:  I would prefer not to.

7              THE COURT:  Have you told your client they cost

8   about a thousand dollars apiece?

9              MR. GLASS:  Yeah.

10             But, you know, Mr. Chin is -- especially, also I

11  think has more freedom of the witnesses to be truthful and

12  open now because Mr. Chin is no longer their principal.  So

13  we feel very confident different that, you know, when the

14  evidence comes out, they will say that, you know,

15  Mr. Chin -- I think at trial, they would have trouble

16  defending Mr. Chin if it gets that far, you know, as a

17  sympathetic character in this series of events.

18             THE COURT:  I'm sure he is a tough guy.

19             MR. GLASS:  Let's say I'm personally aware of

20  about 12 litigations that he's involved in with teachers at

21  this school, but...

22             THE COURT:  Well, you know, principals attract

23  litigation the way police officers attract litigation.  Like

24  you are kind of not doing your job if you have never been

25  sued.

```
                    Proceedings                    17
```

1      MR. GLASS:  Well, I have been working with the DOE

2   and the union a long time, and let me tell you that

3   Flushing High School in particular, I have never seen so

4   many claims come out of one school, but... So, yeah, it

5   does raise some concern.

6          And, obviously, Mr. Chin is most -- I mean Mr. Ok

7   is most concerned about his job.  I mean, he was a highly

8   effective teacher.  Now, he's in this limbo.  I have

9   approached the defendant.  I have also encouraged him

10   through his 3020-A counsel in the disciplinary proceedings

11   to see if we can sort of settle everything at once.  I

12   haven't really heard back from the City on that yet, but,

13   you know, part of this is -- their weapon is 3020-A;

14   obviously, his weapon is federal court, so it kind of shakes

15   out.

16          THE COURT:  Well, no.  There is a timing issue

17   that I have to think about.  You know, their weapon is

18   3020-A, his weapon is federal court, but it may not be -- I

19   don't want to say "right," because it is right -- but it may

20   not be prudent to proceed here without knowing where that

21   comes out.

22          I take it while he is on the suspended status is

23   he still being paid?

24          MS. BRANCH:  Yes.

25          MR. GLASS:  Yeah.  And also, just one factual

Proceedings                                    18

1  thing, I mean, it was not required that he be removed from

2  te school pending charges.  This is something that Chin put

3  in place, and it's not --

4          MS. BRANCH:  No.

5          MR. GLASS:  -- it's not actually required in every

6  case that a teacher be removed from his assignment or from

7  his school pending 3020-A charges.  I don't know of --

8          MS. BRANCH:  Your Honor, there is absolutely --

9  I'm sorry, but I have to interject here.  That is absolutely

10 not correct.  Mr. Chin would have had nothing to do with

11 Mr. Ok being removed from the school.  That is a decision

12 that is made by the DOE's legal department, and that is done

13 with all teachers who have 3020-A charges.

14         THE COURT:  You are saying there is discretion?

15         MR. GLASS:  That's not --

16         MS. BRANCH:  Not for the principal.

17         MR. GLASS:  That's not totally -- I even went to a

18 hearing last week with another principal who said that she

19 had a choice of whether to remove the teacher or not, so

20 that's not true.  But regardless, you know --

21         THE COURT:  There is a dispute.

22         MR. GLASS:  There's not -- yeah.

23         He's on pay pending.  You know, he can't be off

24 pay until such time an arbitrator issues a penalty, so --

25         THE COURT:  Right.

```
                    Proceedings                    19

 1          MR. GLASS:  -- that's the status right now.

 2          THE COURT:  Okay.  I think I understand.

 3          Let me ask the defendant this question:  Your

 4   letter is all about alleged deficiencies on the face of the

 5   complaint.

 6          MS. BRANCH:  Yes.  Some of them, yes.

 7          THE COURT:  Are you going to move?

 8          MS. BRANCH:  Well, Your Honor, when I spoke to

 9   plaintiff's counsel last, we just talked about it upstairs

10   very briefly.  It appears that there are some things that

11   the City would want to move on that.  Perhaps, a partial

12   motion.

13          THE COURT:  Why don't you wait for summary

14   judgment?

15          MS. BRANCH:  Well, Your Honor, as you mentioned, a

16   3020-A still hasn't happened yet.  So I'm talking

17   specifically about the New York Civil Service Law claim.

18          THE COURT:  Right.

19          MS. BRANCH:  That claim really should not go

20   forward.

21          THE COURT:  That claim is not right.

22          MS. BRANCH:  No.  No, it is not.

23          THE COURT:  Right.

24          MS. BRANCH:  So we would want to move for at least

25   a partial motion on those grounds.  And then also as far as
```

Proceedings                    20

1  just on the face, there are really hardly any allegations by

2  Amaya.  So with respect to the 1983 First Amendment claim,

3  there are no allegations about speech made to Amaya or Amaya

4  punishing him in some way for that.

5           THE COURT:  That speech made to?

6           MS. BRANCH:  Made by Mr. Ok to Amaya and Mr. Amaya

7  punishing him in some way for that.  So we would want to

8  move on partial grounds for that as well.

9           THE COURT:  Okay.  Do you want to just deem your

10 letter to be the motion?

11          MS. BRANCH:  Well, Your Honor, I failed to include

12 that a particular fact in the letter, so no.

13          THE COURT:  Fine.

14          MS. BRANCH:  If you permit me to submit an extra

15 paragraph or two, then yes.

16          THE COURT:  Okay.  Can you do that tomorrow?

17          MS. BRANCH:  Tomorrow?  Or Monday?

18          THE COURT:  Tomorrow?  If you tell me you do not

19 work weekends, then I will tell you Monday, but my

20 experience is most court counsel are in the office on

21 weekends.

22          MS. BRANCH:  I can do it tomorrow, sure.

23          THE COURT:  Whatever you want.  You can do it

24 tomorrow --

25          MS. BRANCH:  Well, Your Honor, I'm in trial so

Proceedings                                    21

1    that's why I'm --

2              THE COURT:  Oh.

3              MS. BRANCH:  I hesitate because I have the weekend

4    planned with other things.

5              THE COURT:  Okay.  Let's say you supplement your

6    letter on Monday, and that will be the motion to dismiss.

7              MS. BRANCH:  I can do that.

8              THE COURT:  Okay.

9              MS. BRANCH:  Thank you.

10             THE COURT:  And the plaintiff will respond in 14

11   days after that.

12             Now, I do have a couple of other issues I want to

13   talk about with regard to the grounds raised in the

14   defendants' letter.  I don't really understand the notice of

15   claim's situation.  You have to file a notice of claim

16   before you can proceed under state law, right?

17             MS. BRANCH:  He did.

18             THE COURT:  Oh, there is a notice of claim?

19             MS. BRANCH:  There is a notice of claim.

20             THE COURT:  Okay.  I thought you were complaining

21   that he had not done one.

22             MS. BRANCH:  No, Your Honor, he did file a notice

23   of claim.  What the defendants are saying is that the notice

24   of claim was filed so late in the game that there are

25   numerous events that would not meet the statute of

Proceedings                                              22

1    limitations because they occurred months, so, you know, more

2    than a year before he actually filed the notice of claim.

3            THE COURT:  Does the notice of claim have to be

4    filed 90 days after the complained-of incident.

5            MS. BRANCH:  Yes, after the accrual of your claim.

6    That's what the --

7            THE COURT:  The accrual of your claim?

8            MS. BRANCH:  That's what the statute says, yes.

9            THE COURT:  And we are only dealing with state law

10   claims?

11           MS. BRANCH:  Yes.

12           THE COURT:  Okay.  So is there not an agreement

13   that, in fact, anything that happened prior to 90 days

14   before the notice of claim, while he might be able to get in

15   evidence for purposes of showing other things like intent,

16   you cannot recover damages based on things that proceed the

17   notice of claim by more than 90 days, right?

18           MR. GLASS:  With regard to specific acts, I guess

19   you're right, Your Honor.  But I guess this is on ongoing

20   situation where he's faced with 3020-A presently, so there

21   might be some things what's encompassed within that time

22   period when we filed it.

23           THE COURT:  Sure.  I am not saying there isn't.

24           But, I mean, let's go through, what are your state

25   law claims?  Aside from the 1983 claim, what have you got?

Proceedings                                          23

1        MR. GLASS:  I threw in a appendant defamation.

2        THE COURT:  Okay.  When was the defamation?  Was

3   that within 90 days of filing the notice of claim?  It looks

4   like not.

5        You see, there are some issues with the way this

6   complaint was pled.

7        MS. BRANCH:  Yes.

8        MR. GLASS:  I mean, we can address that in the

9   letter to see -- I understand Your Honor's point.

10       THE COURT:  Well, I do not want to put Defendants

11  to the trouble of moving to dismiss things that we all

12  recognize cannot go forward.  The problem is I think your

13  complaint is not written to facilitate our determination of

14  that, and I also will tell you that I think you ought to

15  give up the intentional infliction of emotion distress

16  claim.  You know why, right?  Has anyone ever won one?

17       MR. GLASS:  No, the heart of the complaint is the

18  federal claim.  There's no question about it.

19       THE COURT:  I agree.  And I am not telling you to

20  get rid of the state claims, but I would like you to write

21  to the defendant, not to me, by Tuesday narrowing your

22  claims to extent you think that is reasonable to do.  And

23  like I said, I think that should include the voluntary

24  dismissal of the IED claim.

25       MS. BRANCH:  Well, Your Honor, if I may ask?  If

Proceedings                               24

1   the defendant has until Tuesday, may I also have until

2   Tuesday night before I submit the letter?

3               THE COURT:  Yes, I guess so.  Wednesday.

4               MS. BRANCH:  Thank you.

5               THE COURT:  Okay.

6          And if there are things in this complaint that are

7   being offered just to prove intent and not to seek to

8   recover damages because, in fact, they are beyond the notice

9   of claim window, tell her that, too, please.  Okay?  One

10  purpose of this conference is to make less work for the

11  parties, not more.  Sometimes that means doing a little more

12  on the front end, but it saves the work on the back end.

13              MS. BRANCH:  Understood.

14              THE COURT:  Okay.  Let me ask the defendants this:

15  Is there any conflict in you representing Mr. Chin in light

16  of the pending charges?

17              MS. BRANCH:  Pending charges against Mr. Ok?

18              THE COURT:  Mr. Chin.

19              MS. BRANCH:  There are no pending charges against

20  Mr. Chin.

21              THE COURT:  Oh.  Oh, why am I misinformed?  I

22  thought there were pending charges.

23              MR. GLASS:  He has been removed.

24              MS. BRANCH:  Right.  But just because the

25  principal is not in the school anymore, does not mean that

Proceedings                                          25

1   there are charges.

2          THE COURT:  That is correct.  There are no pending

3   charges?

4          MS. BRANCH:  No.

5          THE COURT:  He is just doing something else with

6   the DOE?

7          MS. BRANCH:  Right.

8          THE COURT:  All right.  That is fine.  No problem.

9          Okay.  Next, let's talk about discovery.  Now, you

10  have taken my suggestion of a 90-day discovery period to

11  heart?

12         MS. BRANCH:  Yes, Your Honor.

13         THE COURT:  But I am not convinced that it is

14  possible.

15         MS. BRANCH:  I would like to -- once I began

16  really looking into the emails that I've been receiving over

17  the past few days, it became clear that I just don't have

18  enough in.  If we need to do e-discovery then I would like

19  to ask for more time.  And I apologize for not thinking

20  about that more in-depth before submitting the schedule, but

21  I can't be confident that we could get it done.

22         THE COURT:  Okay.  Next time you appear before me,

23  you will understand my expectations for this conference --

24         MS. BRANCH:  Yes, Your Honor.

25         THE COURT:  -- and you will do what you need to

```
                         Proceedings                    26
```

1   do.

2              MS. BRANCH:  Yes, Your Honor.

3              THE COURT:  Okay.  When is your trial over?

4              MS. BRANCH:  4/17 -- or 18.

5              THE COURT:  Okay.  Nobody has made Rule 26(a)(1)

6   disclosures yet, right?

7              MS. BRANCH:  No.

8              THE COURT:  Okay.  Let's do this:  Let's work

9   backwards.  Let's say by April 27th -- no, that is too soon.

10  May 4th, you exchange Rule 26(a)(1) disclosures.  By

11  May 11th, you serve written discovery requests,

12  interrogatory and document requests.  Those will be

13  responded to on June 11th, and really realistically, give me

14  a range of depositions that each side is thinking of taking.

15  I assume from the defendants' perspective it is probable

16  only the plaintiff's deposition that needs to be taken,

17  maybe there are some former employees.

18             MS. BRANCH:  At this point I think it would only

19  be the plaintiff because almost everyone else still works

20  for the DOE.

21             THE COURT:  You know, plaintiff's 26(a)(1)'s are

22  going to disclose to you a number of witnesses --

23             MS. BRANCH:  Right.

24             THE COURT:   -- who the plaintiff says are going to

25  give evidence that shows that Plaintiff did not do anything

Proceedings                                      27

1    wrong and Mr. Chin was out to get him.

2              MS. BRANCH:  Right.

3              THE COURT:  Again, neither side is going to take

4    30 depositions in this case.  It is simply not economically

5    possible.  But you each may take three to four, I think.

6              Does anybody think that is wrong?

7              MR. GLASS:  Well, we'll certainly depose Chin and

8    Amaya, but I mean, beyond that, I'm now sure.

9              MS. BRANCH:  I have no reason to believe it will

10   be beyond three or four for Defendants.

11             THE COURT:  Okay.  So if we have the documents by

12   June 11th and we give you 60 days, to August 13th to

13   complete depositions, that should be plenty of time, right?

14             MS. BRANCH:  I would agree, yes, Your Honor.

15             MR. GLASS:  That's fine.

16             THE COURT:  Okay.  Tell me if I am wrong.  Stop me

17   if I say anything that does not meet your requirements.

18             MS. BRANCH:  With one caveat, Your Honor.  With

19   respect to the responses to the document request by 6/11 --

20             THE COURT:  Yes.

21             MS. BRANCH:  -- are we saying that would include

22   the electronic discovery as well?

23             THE COURT:  It would.  The electronic discovery

24   should be easier for you, not harder.

25             MS. BRANCH:  No, it shouldn't be.  Depending on

Proceedings                                    28

1   how many -- I don't know, there could be thousands of

2   emails.  It's just filtering through them and producing

3   them, that does take time.

4           THE COURT:  Do they?  Oh, I guess reading them

5   after you have put in the button and they spit them all out,

6   you have to read them.

7           MS. BRANCH:  That's the time-consuming part, yes.

8           THE COURT:  I'm going to leave it on for June 11th

9   now.

10          MS. BRANCH:  Okay.

11          THE COURT:  If at the end of that period you write

12  me a letter saying, I've got 10,000 emails that I have not

13  been able to review, then we will adjust the schedule.

14          MS. BRANCH:  Yes, Your Honor.

15          THE COURT:  But let's start out optimistically and

16  see how much we can get down.

17          MS. BRANCH:  Yes, Your Honor.

18          THE COURT:  Okay.

19          MR. GLASS:  I can say with my experience with the

20  City, that that's generally the cause of delay.

21          THE COURT:  The City is different when they appear

22  in front of me.  They understand, you know, I give

23  extensions if needed, but not because somebody was working

24  on some other cases and could not get to this one.  So, you

25  know, I expect in all my cases, this one is no different,

Proceedings                                29

1   that both parties are going to make this case a priority and

2   things are going to happen and they are going to push their

3   clients to make them happen, because I do not give

4   extensions gratuitously.  Okay?  I mean, obviously, I am

5   going to extend you if something terrible happens, like some

6   judge says, You have to be in depositions for three weeks

7   solid, you know, I have to accommodate that.  But if there

8   is something that could have been thought of right now and

9   has not been, then I am not going to extend for that reason,

10  and I am going to require notice that there is a need for

11  extension when the need arises, not two months later.  So

12  you could write me before June 11th if you get a handle on

13  the ECI and it is overwhelming.

14          MS. BRANCH:  Okay.

15          THE COURT:  All right?

16          Okay.  So if we optimistically finish discovery by

17  August 13th, there is no doubt in my mind that the

18  defendants are going to try to make a summary judgment

19  motion, which I would require a premotion conference letter

20  on August 20th explaining the basis for the motion.  I will

21  then set a short schedule for the plaintiff to respond to

22  that letter.  We will then have a premotion conference.  The

23  defendant should expect a prompt and short motion schedule

24  following that conference whenever it is.

25          Then I will take the motion.  It will, again, be

Proceedings                                                30

1    on a short schedule.  Figure 14 days for opposition, seven

2    days for reply.  I will get to it quickly.  But I will not

3    commit to how quickly.  And then either I grant summary

4    judgment to the defendants or we go to trial shortly

5    thereafter.  So in all likelihood, it seems to me that we

6    are going to be trying this case, if it survives summary

7    judgment, in October, probably November, but probably then.

8    I have some other things going on then, but if I cannot get

9    to you, I will get you to a senior judge who will try the

10   case.  I will not delay the trial.  Okay?

11          Now, the only other thing I should mention, I

12   mean, just talking to both of you, I do not anticipate any

13   discovery difficulties.  Do you see any, you know, thing

14   that the plaintiff might want that the defendant does not

15   want to give or vice versa?

16          MR. GLASS:  I'm just a little concerned with

17   electronic discovery, just to make sure it's complete.

18          THE COURT:  Counsel is going to demonstrate the

19   utmost diligence.

20          MR. GLASS:  Okay.

21          THE COURT:  Okay?  And she understands that

22   sometimes that requires getting a little tough with your

23   clients for whom it is not as big a priority as it is for

24   her.

25          MS. BRANCH:  Yes.

Proceedings                                          31

1          THE COURT:  If there is a discovery dispute, you

2     should understand I do not do discovery disputes.  That does

3     not mean I send them to a magistrate judge.  It means I do

4     not tolerate discovery disputes.  So if you have a dispute

5     involving some cutting edge, *bona fide* privilege issues or

6     something like that, by all means, bring that in front of me

7     promptly using the peculiar procedures I have in my

8     individual practice rules.  But if it is the usual kind of

9     discovery motion, this request is too broad, this response

10    is too narrow, somebody at a deposition instead of saying

11    object, which is all you are allowed to say, was explaining

12    the objection in a way that tipped off their client what to

13    be careful about, if it is that kind of thing, you should

14    know that 95 percent of the time I end up making the loser

15    pay attorneys' fees on the discovery motion, okay?  So do

16    not come to me with a discovery motion unless you really

17    think it is something you need or a position you need to

18    protect and it is something on which you reasonably expect

19    to prevail.  Because I do not like awarding attorneys' fees,

20    and I do not get it.  Because I used to practice, I do not

21    get more than three or four discovery motions a year.  You

22    know, my window of what is good faith discovery under

23    Rule 37 just seems to be narrower than what the lawyers' is

24    most of the time.  So please keep that in mind so we do not

25    have an issue.

Proceedings                                                    32

1           Again, looking at both of you and listening to

2    both of you, you both seem quite reasonable.  I do not think

3    we are going to have any problems here at all.

4           MR. GLASS:  Well, I was in her shoes many years

5    ago, and I generally have a pretty good relationship with

6    that office, so I don't anticipate any problems.

7           THE COURT:  I suspected that.  You did not overtly

8    say before that you used to be in her shoes, but you

9    obviously have some experience from that side of the table.

10          MR. GLASS:  Yes.

11          THE COURT:  Okay.  Anything else we need to cover?

12   You know, you do not need to worry about these dates.  I

13   will put them in the minute order so that you have them and

14   we will see what we can do with them.

15          MS. BRANCH:  I believe that Your Honor suggested

16   everything -- I don't have anything further.

17          THE COURT:  Okay.

18          MR. GLASS:  Is there anything regarding -- I don't

19   necessarily anticipate experts.

20          THE COURT:  It is a good point.  I am not going to

21   schedule expert discovery now because nobody knows what they

22   are going to have.  I think there probably will not be any

23   experts.  But just in case if there are, you have to notify

24   me promptly sometime during the fact discovery period.  The

25   schedule I set is for fact discovery.  It is not assuming

Proceedings                                33

1   expert discovery.  But I need to know before the end of fact

2   discovery that there is something on which you think you

3   need an expert.

4           Do you see you needing any experts now?

5           MR. GLASS:  No, I don't anticipate any in this

6   kind of case.

7           THE COURT:  Just in case, though, let me know well

8   before the fact discovery cutoff so that we can set up an

9   extension that will accommodate any experts.

10          Anything else I can do for you?

11          MS. BRANCH:  No, Your Honor.

12          MR. GLASS:  No.  Thank you, Your Honor.

13          THE COURT:  Nice to see you all.  Thanks for

14  coming in.

15          (Matter concluded.)

16                      --oo0oo--

17

18

19

20   *I (we) certify that the foregoing is a correct transcript*
     *from the record of proceedings in the above-entitled matter.*
21

         */s/ David R. Roy*              *19th Day of April, 2018*
22        *DAVID R. ROY*                        *Date*

23

24

25