UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SEUNG-YONG OK,

                              Plaintiff,

                -against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
TYEE CHIN, FORMER PRINCIPAL OF FLUSHING
HIGH SCHOOL, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY; LUIS AGUIRRE
AMAYA, ASSISTANT PRINCIPAL OF FLUSHING
HIGH SCHOOL, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY,

                              Defendants.
------------------------------------------------------------------------x

**DEFENDANTS'
STATEMENT OF
UNDISPUTED FACTS
PURSUANT TO
LOCAL RULE 56.1__**

18 Civ. 0392 (BMC)

        Pursuant to Rule 56.1 of the Local Rules of this Court, defendants submit the following statement of material facts as to which it contends there is no genuine issue to be tried:

**A.      Background**

        1.      Plaintiff, Seung-Yong Ok, is a tenured teacher employed by defendant r§ 1983 ("§ 1983"); Section 75-b of the New York Civil Service Law ("CSL § 75-b") and under New York negligent and intentional infliction of emotional distress law[1], alleging that defendants retaliated against him for his speech regarding school matters and for filing complaints with the DOE.  *See* Complaint, Docket Entry No. 1, ¶¶ 13-17.[2]

        2.      Plaintiff taught as a substitute teacher licensed in the areas of Biology and General Science for DOE schools from September 1996 to February 2001.  *See* Plaintiff's Assignment History, Ex. A.

---

[1] Per May 7, 2018 order by U.S.D.J. Cogan, plaintiff has withdrawn his negligent and intentional infliction of emotional distress law claims and plaintiff's libel and slander claims have been dismissed. ECF document 21.

[2] In this 56.1 statement, all references to "Exhibit" or to "Ex." are to the exhibits annexed to the Declaration of Lora Minicucci, dated February 29, 2020 ("Minicucci Decl.").

3. DOE appointed plaintiff for employment as a regular staff teacher in February, 2001. *See* Plaintiff's Assignment History, Ex. A.

4. Plaintiff was reassigned to teach sciences at Flushing High School ("FHS"), located in the County of Queens, New York, at the beginning of the 2010-2011 school year. *See* Ex. A.

5. Plaintiff's job duties as a teacher in the science department included, but were not limited to: organizing a student curriculum, using DOE approved methods for teaching lessons, keeping records on students' academic progress, and administering and grading tests. *See* FHS Teacher Handbooks for 2015-2016 and 2016-2017, Ex. B at 9.

**B. The 2013-14, and 2014-15 School Years**

5. James Brown ("Principal Brown") was the Principal of FHS for the 2013-2014 school year. *See* § 3020-a Decision, Ex. C at 17.

6. Principal Brown implemented a new grading policy at FHS during the 2013-14 school year, and plaintiff often criticized Principal Brown's initiative as violative of DOE policy. *See* § 3020-a Decision, Ex. C at 16 and 17.

7. Plaintiff used the "Reply All" feature of the DOE's email system to communicate his opinions about school and DOE policies to Principal Brown, the DOE Chancellor, and other DOE officials during the 2013-14 school year. *See* § 3020-a Decision, Ex. C at 16-17.

8. On November 5, 2013, plaintiff sent a 687-word "Reply All" email to 219 FHS staffers, in response to a November 5, 2013 email announcement with the subject line "Staff Development." *See* November 2013 Unsubscribe Emails, Ex. D at 6, 9.

9. In his "Reply All" email, plaintiff changed the subject line of the original November 5th email to "Proposed Grading Policy," and in the body of the email, discussed

plaintiff's disagreement with Principal Brown's grading policy. *See* November 2013 Unsubscribe Emails, Ex. D at 6-8.

10.     On November 6, 2013, FHS teacher April Volponi sent a "Reply All" email in response to plaintiff's email, changing the subject line to "UNSUBSCRIBE." Ms. Volponi's email stated "Please remove me from your PERSONAL BLOG PAGE," and "I do not agree with you and do not wish to receive this." *See* November 2013 Unsubscribe Emails, Ex. D at 5.

11.     That same day, FHS Teacher Jaime Brown sent a "Reply All" email in response to Ms. Volponi's November 6, 2013 email, stating "I agree. I have asked you nicely, and professionally in the past to remove me as well. I appreciate your enthusiasm, however you are **not** my A.P., an administrator, or the union rep, and therefore I do **not** want these communications to continue." FHS Teacher Virgen Claudio also sent a "Reply All" email, thanked Ms. Brown for her email, and stated her full agreement with her. *See* November 2013 Unsubscribe Emails, Ex. D at 5 (emphasis in original).

12.     In a "Reply All" response on November 6, 2013, plaintiff rejected his colleagues' email removal requests, stating "I do not have an email distribution list. I simply reply all. If you do not like any reply to a communication or issue the principal originally sent out – then feel free to delete it." *See* November 2013 Unsubscribe Emails, Ex. D, at 1-2.

13.     Thereafter, Ms. Brown and Ms. Claudio each sent a "Reply All" to plaintiff's email, requesting for a second time that plaintiff remove them from his email communications. *See* November 2013 Unsubscribe Emails, Ex. D at 3-4.

14.     Plaintiff responded "Again, if you feel I'm misusing the DOE email for non-school and educational purposes, contact the DOE instead of whining to me. :) Have a nice day." *See* November 2013 Unsubscribe Emails, Ex. D at 6.

15.     Ms. Claudio then sent a third email asking to be removed from plaintiff's emails, to which plaintiff responded "I, just as any other individual in our staff – be they administrator or not, have the right to Reply All to email pertaining to issues regarding this school.  If you happen to be on that Reply All list, so be it."  *See* November 2013 Unsubscribe Emails, Ex. D at 4.

16.     DOE's Office of Special Investigations ("OSI") investigates allegations of improper and unlawful behavior, including corporal punishment and verbal abuse against students.   *See*   https://www.schools.nyc.gov/about-us/leadership/legal   (last visited March 2, 2020).

17.     The Special Commissioner of Investigation for the New York City School District ("SCI") investigates allegations of harassment and physical contact by school employees with students, as well as fraud, theft, and inappropriate use of DOE resources.  *See* https://nycsci.org/message-from-the-special-commissioner/ (last visited March 2, 2020).

18.     On October 18, 2013 Principal Brown and an anonymous employee submitted a complaint to OSI, contending that the school-wide emails plaintiff sent to FHS staff and DOE officials using the "Reply All" feature was inappropriate, and filled staff's inboxes, preventing them from receiving other, work-related emails.  OSI also received an anonymous complaint alleging that plaintiff continued to send unwanted "Reply All" emails. *See* 3020-a Decision at 16-17, Ex. 3; 2014 OSI Findings, Ex. E.

19.     OSI investigated Principal Brown's complaint, and in a memorandum dated February 4, 2014 , concluded that plaintiff's use of the DOE email system's "Reply All" feature did not violate DOE rules and regulations.  *See* 2014 OSI Findings, Ex. E.

20.     During the 2014-15 school year, Enric Kendall ("Principal Kendall") was Principal of FHS.  Principal Kendall warned plaintiff against sending unwanted "Reply All" emails as in his opinion they promoted a negative school culture.  *See* § 3020-a Decision at 17, Ex C.

21.     On November 22, 2014 Plaintiff sent a "Reply All" email in response to an email entitled "State Visit- DTSDE," sent by Principal Kendall on November 13, 2014. Plaintiff's email alleged concerns over hearing that the administration and a DOE network representative interrupted teachers during lessons to critique them.  *See* November 2014 "Reply All" Emails, Ex. F.

22.     Principal Kendall responded with a "Reply All" email, advising plaintiff to contact him directly, and reminding plaintiff that "There is no need to start an email thread that can lead to an unhealthy climate."  *See* November 2014 "Reply All" Emails, Ex. F.

23.     Plaintiff sent a "Reply All" to Principal Kendall's response, contending that his email use was proper, and no different than making the same speech verbally at a faculty meeting.  *See* November 2014 "Reply All" Emails, Ex. F.

**C.      The 2015-16 School Year**

25.      Tyee Chin ("Principal Chin") became Principal of FHS at the beginning of the 2015-2016 school year.  *See* § 3020-a Decision at 17, Ex. C.

26.     Luis Aguirre Amaya ("A.P. Amaya") was an Assistant Principal of FHS, and plaintiff's rating officer for the 2015-16 school year.  *See* 2015-16 Lesson Observations, Ex. G.

27.     A.P. Amaya evaluated plaintiff's teaching on the following dates during the 2015-16 school year:  October 16, 2015; February 26, 2016; April 21, 2016; June 2, 2016. *See* 2015-16 Lesson Observations, Ex. G.

28.     A.P. Amaya rated plaintiff's teaching as either "Effective" or "Highly Effective" in his lesson observations.  Ex G.

29.     On plaintiff's February 26, 2016, observation, A.P. Amaya suggested that plaintiff implement more student-centered group projects from the New Visions Living Environment curriculum in order to engage students in higher-level activity and inquiries.  *See* February 2, 2016 Observation at 5, Ex. G.

30.     On plaintiff's April 21, 2016 observation, A.P. Amaya noted that plaintiff sometimes used low-level questioning, and repeated the recommendation given to plaintiff during his February 26, 2016 observation, which was to engage students in group activities to encourage higher-level student inquiries and contributions.  *See* April 21, 2016 Observation at 4, Ex. G.

31.     On plaintiff's June 2, 2016, observation A.P. Amaya reminded plaintiff to design activities to engage students in high-level cognitive activities when planning future lessons.  *See* June 2, 2016 Observation at 4, Ex. G.

32.     During the 2015-16 school year, FHS was on the DOE's list of "Renewal Schools."  *See* 2015-16 FHS Staff Handbook at 6, Ex. H.

33.     The DOE's Renewal School Program supports schools with low student performance and graduation rates by providing targeted resources and setting performance benchmarks, such as Regents Examination scores and increased graduation rates, to hold schools accountable for improvement.  *See*  https://www1.nyc.gov/office-of-the-mayor/news/904-

14/pledging-stronger-public-schools-mayor-de-blasio-school-renewal-program-. (last visited March 3, 2020).

34. In the Fall of 2015, Principal Chin began implementing several new programs designed to help FHS improve student attendance, Regent Examination scores, and graduation rates, all of which were Renewal Program benchmarks for FHS. *See* FHS Newsletter #7, dated November 30, 2015, Ex. I at 1-2.

35. Plaintiff criticized the FHS administration's new approaches towards lesson planning and teacher observations in "Reply All" emails in September and October 2015. *See* September and October 2015 "Reply All" Emails, Ex. J.

36. On or about November 24, 2015, Principal Chin issued a memorandum directive to individual FHS teachers with less than 75% of their students passing, advising that a scholarship intervention folder would be initiated for every student that received a failing grade in those teachers' classes. The memorandum advised that "we will use this intervention and Skedula to improve communication between the school and families." *See* Memorandum, dated November 24, 2015, Ex. I.

37. Skedula is the DOE's interactive web-based online platform for managing student data. Teachers are required to record student grades, notes, and interventions on Skedula. Ex. I.

38. On November 30, 2015, Principal Chin emailed FHS a school-wide electronic newsletter that, in part, advised that teachers with a student passing rate of 74% or lower would be required to provide targeted assistance to students in danger of failing. *See* FHS Newsletter #7 at 1, Ex. I.

39. The newsletter specifically stated that such teachers would be required to document attendance, student outreach and other intervention efforts in Skedula. *See* FHS Newsletter #7 at 1, Ex. I.

40. On December 2, 2015, plaintiff sent a "Reply All" response to Principal Chin's November 30th email, but changed the original email subject title from "November 2015 Newsletter" to "Pressure Towards Grade Inflation." *See* "Pressure Towards Grade Inflation Emails" beginning December 3, 2015, Ex. L at 9.

41. Plaintiff's December 2, 2015 "Reply All" email asserted, in part, that he was aware that Principal Chin had issued a memo to certain teachers requiring those "who had a passing rate of less than 75% in the first marking period compile individual folders for every failing student to document the teacher's academic interventions." Ex. L at 8.

42. Plaintiff asserted that he "heard multiple teachers say that this punitive and excessive paperwork would only spur some teachers to pass students who did not do the required work," and advised Principal Chin that "[his] policy will inevitably result in the practice of pedagogical fraud, whether it was well intentioned or not." Ex. L at 8.

43. Plaintiff copied FHS teachers and high level DOE officials, including former DOE Chancellor, Carmen Fariña, on his December 2, 2015 email. Ex. L.

44. During his deposition on December 2, 2018, plaintiff could not name any teachers that specifically stated to him that they felt pressured to inflate student grades to avoid Principal Chin's documentation requirements. *See* Pl. Deposition at Exhibit BBB at 86.

45. On December 3, 2015, Principal Chin replied to plaintiff's December 2, 2015 email, stating "I have noticed that each time you have a question or concern directed to me, you send an email, add all the staff and cc both superintendent and Chancellor Farina. Please

note that several staff members have been expressing concerns about this practice… if you have a specific administrative question or concerns please direct it to me and stop adding other staff to your email." Ex. L at 8.

46.     Principal Chin further stated "I appreciate your concerns and wonderings. Please feel free to set up an appointment with my secretary so that it can be address[ed]. I also appreciate the fact that you will respect your colleagues' wishes and refrain from this email practice. All your colleagues and the FHS community truly appreciate your effort in helping to build a positive and supportive community and that you will respect their wishes." Ex. L at 8.

47.     In a series of emails that followed on December 4, and 5, 2015, plaintiff reasserted that Principal Chin's policy was an illegal quota, and referred Principal Chin to DOE's Internet Acceptable Use policy, which plaintiff contended did not prohibit his use of DOE email to discuss school issues. Ex. L at 3-4.

48.     In response to the December 4 and 5, 2015 emails, Principal Chin stated "The issue is not you sending out mass email. The issue is that you are asking me a question and adding other staff to your email list, when they did not request to be added to the list…You are well within your rights to send a concern to the entire staff. However, if you are sending me a question directly, which is what you are doing, then send it to me directly and not include all staff…Please get their consent before adding them to the email." Ex. L at 2.

49.     Principal Chin's response explicitly stated "We are not asking staff to change grades. We are not pressing teachers to pass students. Pressuring teachers to pass students will not improve Regents scores or the graduation rate." Ex. L at 2.

50.     On December 5, and 7, 2015, plaintiff copied Principal Chin on plaintiff's emails to the offices of the Superintendent and Chancellor, contending that Principal Chin's

documentation directive was a quota designed to pressure teachers to pass failing students, and that the directive violated a DOE-UFT agreement prohibiting DOE from requiring teachers to complete "excessive and redundant paperwork."  *See* December 2015 Emails to DOE, Ex. M.

51.     On March 14, 2016, Principal Chin gave a presentation at a FHS Small Learning Community ("SLC") meeting about the DOE's annual teacher survey.  *See* OSI Investigative Report, dated June 24, 2016, Ex. N at 1.

52.     Administrators are not permitted to tell teachers how to respond to survey questions. *See* OSI Investigative Report at 2, Ex. N.

53.     During the meeting, Principal Chin advised teachers that negative responses could affect school ratings.  *See* OSI Investigative Report at 2-3, Ex. N.

54.     Plaintiff emailed Principal Chin shortly after the meeting on March 14, 2016, asserting that Principal Chin's documentation policy was a scheme to get teachers to fraudulently pass students.  *See* March 14, 2016 Emails, Ex. O at 1.

55.     Plaintiff also contended that Principal Chin's survey comments were "tantamount to a threat and borders on urging teachers to lie on the survey."  *See* March 14, 2016 Emails at 1, Ex. O.

56.     Principal Chin replied by email, stating "No one asked anyone teacher to lie on the survey," and that he declined to answer plaintiff's repeated questions at that meeting about students passing math classes because that was "not the correct meeting to have that discussion."  *See* March 14, 2016 Emails at 1, Ex. O.

57.     On March 14, 2016, plaintiff forwarded the March 14, 2016 email sent to Principal Chin to the offices of the Superintendent and Chancellor.  He did not include the subsequent emails with Principal Chin.  *See* Forwarded March 2016 Survey Complaint, Ex. P.

58.     On March 16, 2016, plaintiff sent FHS staff a "Reply All" email in response to a general announcement for staff to report to the library on March 16, 2016.  *See* March 16, 2016 "Reply All" Email, Ex. Q.

59.     Plaintiff's March 16th email criticized Principal Chin's presentation of "10 Quality Review Criteria" at a professional development meeting, stating that the training session was poorly executed.  *See* March 16, 2016 "Reply All" Email, Ex. Q.

60.     On March 17, 2016, Principal Chin's Secretary, Terri Wright, sent FHS staff an email entitled "Newsletter 13 QR 3-14-16," attaching a school newsletter.  *See* March 23, 2016 "Reply All" Email, Ex. R at 3-4.

61.     On March 23, 2016, plaintiff responded to the March 17th email by sending a "Reply All"  and changing the original subject line from "Newsletter 13 QR 3-14-16," to "Negative Observations – 75% passing rate quota Re: Newsletter 13 QR 3-14-16."  *See* March 23, 2016 "Reply All" Email at 1, Ex. R.

62.     In the email, plaintiff asserted that "the redundant paperwork demanded by Principal Chin…resulted in unprecedented gains in passing rates" and "I surpassed the 75 without the need to inflate grades."  *See* March 23, 2016 "Reply All" Email at 3, Ex. R.

63.     Plaintiff encouraged teachers with negative ratings to post them in response to his email so "we can compare and document those that may be nothing more than nitpicking harassment rather than substantive and valid pedagogical evaluations."  *See* March 23, 2016 "Reply All Email" at 3, Ex. R.

64.     Plaintiff concluded his email by stating that he filed a complaint with the New York State Attorney General's Office and contacted a New York Times education reporter about the matter.  *See* March 23, 2016 "Reply All" Email at 3, Ex. R.

65.     On April 21, 2016, plaintiff sent a "Reply All" to the March 17, 2016 email a second time, and changed the original subject line from "Newsletter 13 QR 3-14-16," to "RE: TIP Warning Letters in the MailboxesNewsletter 13 QR 3-14-16" [sic].  *See* April 21, 2016 "Reply All" Email, Ex S at 1.

66.     Plaintiff's April 21st email asserted that some teachers received a letter from Principal Chin that advised they were in danger of being rated "Ineffective" or "Developing."  Plaintiff's email questioned whether Ms. Giglio, FHS's UFT Chapter Leader, would find that those teachers were specifically targeted if she looked into the matter.  *See* April 21, 2016 "Reply All" Email, Ex S, at 1.

67.     On March 28, 2016, plaintiff submitted an email complaint to SCI, in which he alleged that Principal Chin had issued an illegal quota system disguised as student intervention and parent outreach.  *See* Plaintiff's March 28, 2016 Email to SCI, Ex. T at 1.

68.     Plaintiff's email complaint to SCI also alleged that during the March 14th staff meeting, Principal Chin gave teachers the impression that they might lose their jobs based on the results of the teacher survey.  *See* Plaintiff's March 28, 2016 Email to SCI at 1, Ex. T.

69.     Following receipt of plaintiff's complaint, SCI referred the incident to OSI for investigation.  *See* OSI Investigative Report dated June 24, 2016, Ex. N at 1.

70.     In April and May of 2016, OSI interviewed plaintiff, Principal Chin, Assistant Principal Lilliam Katcher ("A.P. Katcher"), and the DOE's Director of Survey Initiatives to investigate the incident.  Ex. N at 1-2.

71.     On June 24, 2016, OSI issued an investigative report.  The report concluded that Principal Chin engaged in conduct prohibited by the DOE's Survey Ethics Reference Guide and Review.  Ex. N at 2.

72. Plaintiff received a "Highly Effective" Measure of Teacher Performance ("MOTP") rating, and an overall "Effective" APPR rating for the 2015-16 school year. *See* 2015-16 MOTP, and 2015-16 APPR, Ex. U.

**D.    The 2016-17 School Year**

74. On September 13, 2016, FHS Secretary Terri Wright sent FHS staff an email entitled "Classroom Expectations," which addressed "New Visions" curriculum. *See* Classroom Expectations Email, Ex. V at 6-7.

75. On September 19, 2016, Plaintiff responded to the email with a "Reply All". Plaintiff's email contended that FHS teachers were "flustered again at the top down decisions," and expressed plaintiff's disagreement with a directive at prohibiting teachers from storing school supplies in certain areas. *See* Classroom Expectations Email, Ex. V at 6-7.

76. On October 3, 3016, plaintiff sent a "Reply All" to the September 13th email a second time, and changed the original subject line from "Classroom Expectations" to "Re: Classroom Expectations – Curriculum Pressure by Renewal Team Against Contract. *See* Classroom Expectations Email, Ex. V at 1.

77. Plaintiff's October 3rd email criticized the New Visions curriculum that FHS science teachers were directed to implement, and quoted a section of the DOE-UFT contract addressing curricula. Plaintiff concluded his email stating "If I were any untenured teacher and my career is being threatened by a contractually prohibited tactic, I would not only sue for the money spent in obtaining a degree in education, but for future earning potential that is under threat from administrators acting in bad faith." *See* Classroom Expectations Email, Ex. V at 2.

78.     On October 12, 2016 plaintiff sent another email within the same chain to all staff, in which he publicly demanded to know why he was left off an email sent out by Principal Chin. Ex. V at 2.

79.     On October 31, 2016, Principal Chin, A.P. Amaya, and the DOE's Director of School Renewal, Ignazio Accardi, performed a walkthrough of plaintiff's 7th period class.  *See* November 1, 2016 Conference Letter, Ex. W at 1.

80.     During the lesson, the administration observed that plaintiff was not teaching from the New Visions Living Environment curriculum as required.  *See* November 1, 2016 Conference Letter at 1, Ex. W.

81.     A.P. Amaya performed a walkthrough of plaintiff's 8th period class on October 31, 2016 and again observed that plaintiff was not teaching from the New Visions curriculum.  *See* November 1, 2016 Conference Letter at 1, Ex. W.

82.     On November 1, 2016, A.P. Amaya issued plaintiff a conference letter for failure to use the proper science curriculum.  During the conference, plaintiff contended that he was teaching from a different DOE curriculum, not the version distributed to FHS Living Environment teachers on October 30, 2016.  *See* November 1, 2016 Conference Letter at 2, Ex. W.

83.     During the conference meeting, plaintiff asserted that the DOE contract prohibited FHS's administration from requiring plaintiff to teach from the school's curriculum, and that the conference letter constituted "retaliation."  *See* November 1, 2016 Conference Letter at 2, Ex. W.

84.     On November 2, 2016, plaintiff sent an email to the offices of the Superintendent and Chancellor, entitled "Breach of contract regarding curriculum and lesson

planning." Plaintiff's email copied Mr. Accardi, Principal Chin, and A.P. Amaya. *See* November 2016 Breach of Contract Email, Ex. X.

85.     In his email, plaintiff contended that Mr. Accardi determined plaintiff's lesson was "worthless" following his October 31st walkthrough of plaintiff's class, and that Mr. Accardi advised Principal Chin and A.P. Amaya to issue plaintiff discipline or negative observations for plaintiff's failure to follow the New Visions curriculum. *See* November 2016 Breach of Contract Email at 1, Ex. X.

86.     Plaintiff included portions of his lesson plan in the November 2nd email, and criticized the New Visions curriculum, stating "Perhaps your renewal team should be better trained on the terms of the teacher's contract when it comes to curriculum and lesson planning." *See* November 2016 Breach of Contract Email at 1, Ex. X.

87.     Chancellor Farina forwarded plaintiff's email to Superintendent Horowitz, commenting "Please follow up.  WE are becoming a bit overzealous" (emphasis in original). *See* November 2016 Breach of Contract Email at 1, Ex. X.

88.     On November 17, 2016, Secretary Wright emailed FHS staff Principal's Newsletter #3. *See* November 18, 2016 "Reply All" Email, Ex. Y at 4.

89.     On November 18, 2016, plaintiff sent a "Reply All" to the November 17, 2016 email, in which he ridiculed Principal Chin's use of analogies in Principal's Newsletter #3. *See* November 18, 2016 "Reply All" Email, Ex. Y at 2-3.

90.     On November 22, 2016, Secretary Wright emailed FHS staff Principal's Newsletter #4, which addressed updated renewal benchmarks for FHS.  *See* Newsletter #4 "Reply All" Email, Ex. Z at 8-9.

91.     On November 29, 2016, plaintiff sent a "Reply All" to the November 22, 2016 email, declaring "Lately I have been thinking on how being a teacher in a renewal school is similar to being a disadvantaged minority in America." Plaintiff copied the offices of the Superintendent and Chancellor on his email. *See* Newsletter #4 "Reply All" Email, Ex. Z at 8-9.

92.     Plaintiff's email also criticized the DOE's Renewal Program, and Principal Chin's efforts to meet Renewal Program benchmarks, contending that "Responsibility is an easy work to throw around until the light is shone back on yourself." *See* Newsletter #4 "Reply All" Email, Ex. Z at 6-7.

93.     In response to plaintiff's November 29th email, Assistant Principal Tiffany D'Alessio, Secretary Terri Wright, and Teacher Vincent Tobia emailed plaintiff requesting that he remove them from his email chains. *See* November 2016 Email Removal Requests, Ex. AA.

94.     Plaintiff rejected these requests, and responded in two (2) separate emails that he did not have a "distribution list," and that staff should "simply delete like all of us have to do any emails you feel are not pertinent to you" [sic]. *See* SCI report, Ex. N at 2.

95.     Principal Chin responded to plaintiff publicly on November 30, 2016, stating in part, "I am not interested in your conspiracy plots; negativity and shenanigans…Your reckless actions will cost people their jobs and affect students and family. If the school goes into independent receivership or closure We are all out of a job…Stop trying to pull us apart. Try to help bring us together." [sic] *See* Newsletter #4 "Reply All" Email Ex. Z at 3-4.

96.     Chancellor Farina, copied on the November 29th and 30th email exchanges, did not directly respond to plaintiff's email but asked DOE Executive Dorita Gibson who plaintiff was, and if he had been written up. Chancellor Farina emailed Superintendent Horowitz

regarding Principal Chin's "Reply All" email, stating "Principal should not be answering publicly." *See* Farina November 2016 Response Emails, Ex. BB.

97. On December 1, 2016, plaintiff sent FHS staff a 663-word "Reply All" email message in response to Principal's Newsletter #4. Plaintiff's email stated "I will be the first to admit that I am wrong, which is rare. I admit that Mr. Chin is right and I am wrong. So in the spirit of humble levity and riding alongside the professional example which Mr. Chin displayed, I would also like to publicly and politely ask each of the following colleagues to remove me from any future emails distribution lists:" [sic]. *See* Newsletter #4 "Reply All" Email, Ex. Z at 6-8.

98. Plaintiff's email proceeded to make fun of eight (8) FHS faculty members by name, for their style of dress, last names, and appearance. *See* Newsletter #4 "Reply All" Email, Ex. Z at 6-8.

99. Assistant Principal Teresa Cuti and Secretary Wright submitted complaints to SCI on December 15, and 12, 2016, respectively, to inform SCI that they felt harassed by plaintiff's continuing email campaign and were afraid that plaintiff's behavior would escalate. *See* FHS Staff Complaints to SCI, Ex. CC.

100. In December 2016 and on February 16, 2017, Principal Chin submitted complaints to SCI requesting that plaintiff be investigated for his emails and harassing conduct. *See* Principal Chin's Complaints to SCI, Ex. DD.

101. A.P. Amaya performed his first observation of plaintiff for the 2016-2017 school year on December 13, 2016, and rated plaintiff as "Developing" in the area of "Managing Student Behavior" after observing students on their phones fifteen (15) minutes into plaintiff's lesson. *See* December 13, 2016 Observation, Ex. EE at 2.

102.     Principal Chin conducted an informal observation of plaintiff's third period class on December 15, 2016, and rated plaintiff's teaching as "Developing" in three (3) areas, and "Ineffective" in three (3) areas.  *See* December 15, 2016 Observation, Ex. CCC at 1-4.

103.     Principal Chin rated plaintiff as "Ineffective" in observation category 4e, "Growing and developing professionally."  For this category, Principal Chin noted that plaintiff engaged negatively with colleagues and supervisors, failed to teach from the New Visions science curriculum as required, "use[d] the DOE email system to create a hostile work environment and engage in harassing behavior," disrupted meetings with his personal agenda, and refused to follow school expectations.  *See* December 15, 2016 Observation at 4, Ex. CCC.

104.     Principal Chin further noted "significant" pacing and lesson planning issues while conducting his December 15th observation.  *See* December 15, 2016 Observation at 3, 5, Ex. CCC.

105.     In the evening of December 15, 2016, Plaintiff sent a second "Reply All" to Principal Chin's November 30, 2016, email.  In the email, Plaintiff stated "I don't know about anyone else, but signing off on a 3020-a for a teacher who just returned from an emergency room visit for mini strokes is up there in the negativity column for me.   HAPPY HOLIDAYS everyone.  Have fun at the Christmas party!"  *See* Newsletter #4 "Reply All" Email, Ex. Z at 1-2.

106.     On December 16, 2016, Principal Chin emailed plaintiff feedback on his December 15, 2016 informal lesson observation, noting that the lesson had "serious timing issues," "significant classroom management issues," and "no recognizable structure."  *See* December 16, 2016 Feedback, Ex. FF.

107.     Pursuant to the collective bargaining agreement between the United Federation of Teachers ("UFT") and the DOE, Plaintiff unsuccessfully pursued a grievance

through his union, challenging Principal Chin's December 16, 2016 observation for failure to rate or properly rate components of plaintiff's teaching. *See* APPR Grievance Decision, Ex GG, at 1, 3. *See* Collective Bargaining Agreement at Ex. K.

108. SCI Investigator Michael Dorn, and Supervising Investigator Andre Jenkins interviewed plaintiff on January 10, 2017. *See* SCI June 26, 2017 Report at Ex. HH

109. Following the interview, Plaintiff emailed Investigators Dorn and Jenkins, stating "I feel that I have the right as anyone else in the staff to reply-all and add my voice to pedagogical and school concerns." Plaintiff added that he did not feel he had the right to continue using colleague's names or personal information in emails if asked to stop. *See* Plaintiff's January 2017 Emails to SCI, Ex II.

110. In a second email to Investigators Dorn and Jenkins on January 10, 2018, plaintiff requested that SCI investigate Principal Chin to see whether he suggested that teachers complain to SCI about plaintiff's emails. *See* Plaintiff's January 2017 Emails to SCI at 1, Ex. II.

111. On January 11, 2017, plaintiff sent a "Reply All" to Principal's Newsletter #6, which had been emailed to FHS staff on January 10, 2017. Plaintiff's "Reply All" email alleged that in order to avoid negative evaluations, teachers felt pressured to pass students who had not attained proficiency in Regent's Examination subject areas. *See* January 2017 Email Removal Requests, Ex. JJ at 5-8.

112. Secretary Wright sent a "Reply All" to plaintiff's email on January 12, 2017, and again requested to be removed from plaintiff's email chains. Secretary Wright stated that her email inbox was "constantly full," and she often had to "create folders and delete pertinent messages in order to have space to perform [her] duties efficiently and utilize the Outlook email system." *See* January 2017 Email Removal Requests, Ex. JJ at 3-5.

113. On January 12, 2017, Plaintiff rejected Secretary Wright's request in a "Reply All" email, asserted that he had the right to voice his pedagogical views, and questioned why Secretary Wright read his emails if she found them negative. *See* January 2017 Email Removal Requests at 1-3, Ex. JJ at 6-8.

114. On January 12, 2017, A.P. Cuti emailed SCI to complain that plaintiff continued to "publicly chastise anyone who requests to be removed" from his "Reply All" emails. *See* FHS Staff Complaints to SCI at 5-6 Ex. CC.

115. On January 13, 2017, Principal Chin emailed plaintiff to warn plaintiff that he would proceed with administrative actions if plaintiff continued to ignore requests to be removed from plaintiff's "Reply All" emails. *See* January 2017 Email Removal Requests, Ex. CC at 15.

116. On that same day, plaintiff responded to Principal Chin's email to assert that he was being "singled out" and retaliated against "[f]or simply disagreeing, asking for clarification, or pointing out what's going on in [the] school." *See* January 2017 Email Removal Requests at 14-15, Ex. CC.

117. On February 15, 2017, A.P. Amaya issued plaintiff a disciplinary Letter to File for failure to enter student grades in Skedula, as required of all FHS teachers. *See* February 2017 Letter to File and Rebuttal, Ex. LL at 1.

118. The disciplinary letter advised plaintiff that A.P. Amaya had personally demonstrated to him how to use Skedula, and that despite this instruction, plaintiff still failed to enter student grades in Skedula as of December 9, 2016. *See* February 2017 Letter to File and Rebuttal at 1, Ex. LL.

119.     On or about March 6, 2017, plaintiff submitted a rebuttal to the February 15th disciplinary letter, to dispute the claim that he disregarded A.P. Amaya's Skedula directives, and to assert that A.P. Amaya was targeting plaintiff on behalf of Principal Chin, in retaliation for plaintiff's SCI complaints.  *See* February 2017 Letter to File and Rebuttal, Ex. LL at 3-5.

120.     On February 15, 2017, plaintiff attended a FHS Parent Teacher Association ("PTA") meeting during which A.P. Cuti gave a presentation.  *See* March 2017 Letter to File, Ex. MM at 1.

121.     A.P. Cuti, Dean Veronica MacKay, and Parent Coordinator Mary Vacarr, complained to Principal Chin that plaintiff disrupted the meeting when he handed out his phone number and Regents Examination data to parents, discussed his personal performance ratings, accused the FHS administration of pressuring teachers to pass students, and he interrupted a discussion and spoke inappropriately about a fight between students in the presence of one of the student's family.  *See* February 2018 PTA Meeting Complaints, Ex. NN.

122.     Principal Chin did not attend the February 15, 2017 PTA meeting, but interviewed FHS staff about what occurred during the meeting.  *See* March 2017 Letter to File, Ex. MM at 2.

123.     On March 15, 2017, Principal Chin issued plaintiff a disciplinary Letter to File.  After interviewing FHS staff about the February 15, 2017 PTA meeting he concluded that plaintiff acted unprofessionally at the PTA meeting, and "inappropriately discussed internal and personal matters in the presence of parents and interrupted AP Cuti on 2 occasions during her 'Respect for All' presentation."  *See* March 2017 Letter to File Ex. MM at 2.

124.     On April 3, and April 28, 2017, Principal Chin issued teachers memoranda to inform them of revisions to FHS's academic intervention policy.  The April 3rd memorandum

advised that all teachers, and not just those less than 75% of their classes passing, would be required to create an academic intervention plan for any failing student. The April 28, 2017 memorandum clarified that teachers could choose to document academic intervention efforts either in individualized physical folders, or entering documentation into Skedula. *See* April 2017 Academic Intervention Memos, Ex. OO.

125.    On April 3, 2017, plaintiff sent an email complaint to SCI Investigator Robert Carboine to allege that he was being excluded from email distributions of Principal Chin's newsletters in retaliation for filing SCI complaints. Plaintiff copied Principal Chin and Secretary Wright on his email. *See* Plaintiff's April 2017 SCI Complaint, Ex. PP at 2.

126.    By email on April 3, 2017, Secretary Wright informed Investigator Carboine that she had begun sending plaintiff a "blind carbon copy" ("BCC") of staff-wide emails, or had placed physical copies of communications in plaintiff's teacher mailbox, in an effort to prevent him from sending a "Reply All" to staff-wide emails. Secretary Wright advised that she placed a copy of the allegedly missing newsletter in plaintiff's mailbox right after she emailed the newsletter to FHS staff. *See* Plaintiff's April 2017 SCI Complaint at Ex. PP at 1-2.

127.    On April 4, 2017, Principal Chin submitted a complaint to SCI, to request that SCI investigate plaintiff and Ms. Martinez, a math teacher, for misconduct. Principal Chin alleged that plaintiff and Ms. Martinez were openly discussing SCI's ongoing investigation into allegations that FHS students were being taught Algebra in their Geometry classes, and that plaintiff had reportedly leaked the story to the New York Post. *See* Chin's April 2017 SCI Complaint, Ex. QQ.

128.     Principal Chin stated that DOE's legal office advised him to report these alleged activities by plaintiff and Ms. Martinez, and that plaintiff previously gave the New York Times a story in 2016.  *See* Chin's April 2017 SCI Complaint, Ex. QQ.

129.     SCI transferred Principal Chin's complaint to OSI for investigation. When OSI conducted its investigation interviews, Ms. Martinez denied Principal Chin's allegations, and plaintiff declined to comment.  *See* August 2017 OSI Findings, Ex. RR at 1-2.

130.     In a memorandum dated August 2, 2017, OSI concluded that the allegations against plaintiff and Ms. Martinez could not be substantiated due to a lack of corroborating evidence.  *See* August 2017 OSI Findings, Ex. RR at 2.

131.     On April 29, 2017, plaintiff sent a "Reply All" in response to an April 5, 2017 general email from A.P. Katcher to FHS staff, entitled "Administrative Updates: April 2017."  *See* April 2017 "Reply All" Email, Ex. SS.

132.     Plaintiff changed the subject line of the email to read "Re: Principal Chin's Individual Student Intervention Plans," and argued that Principal Chin's new requirement that teachers maintain individualized academic intervention plans for all failing students constituted hostile treatment and retaliation for teachers who complained to SCI and the New York Post about his initial documentation policy regarding teachers who had a less than 75% passing rate.  *See* April 2017 "Reply All" Email, Ex. SS.

133.     On May 12, 2017, Secretary Wright forwarded a May 11, 2017 "Reply All" email by plaintiff to SCI Investigator Michael Dorn.  Ms. Wright stated that Mr. Ok was an angry "ticking time bomb" and that she was afraid he "may do something one day."  *See* FHS Staff Complaints to SCI, Ex. CC at 7.

134. On May 18, 2017, teacher Keith Carvelas sent Principal Chin and A.P. Amaya an email complaint, to describe a verbal altercation with plaintiff on May 18th, during which plaintiff yelled at Mr. Carvelas and caused him to feel threatened. *See* FHS Staff Complaints to SCI, Ex. CC 8-9.

135. On June 20, 2017, plaintiff emailed Principal Chin, A.P. Amaya, and the office of the Superintendent a rebuttal to his March 15, 2017 Letter to File concerning the February 15, 2017 PTA meeting. *See* Rebuttal to March 2017 Letter to File, Ex. TT at 1.

136. Plaintiff's June 20th rebuttal disputed the complaining FHS staffers' description of what occurred at the PTA meeting, and asserted that Principal Chin issued the disciplinary letter as retaliation for plaintiff's complaints to SCI about the teacher survey, and for assisting FHS math teachers to write a letter to SCI alleging that they were pressured to teach Algebra in Geometry courses. *See* Rebuttal to March 2017 Letter to File, Ex. TT 2-3.

137. On June 27, 2017, Principal Chin issued plaintiff a disciplinary Letter to File for his failure to comply with the administration's directive requiring teachers to either create individualized academic intervention folders for failing students or document intervention efforts in Skedula. *See* June 2017 Letter to File, Ex. UU.

138. The disciplinary letter described that plaintiff failed to produce an academic folder when requested by Mr. Amaya, and opted to use Google Voice and other methods of communication instead of entering required information for several students that failed his class into Skedula. *See* June 2017 Letter to File, Ex. UU.

139. Plaintiff received a "Developing" Measure of Teacher Practice ("MOTP") rating, and an overall "Effective" Annual Professional Performance Review ("APPR") rating for the 2016-17 school year. *See* 2016-17 MOTP and APPR Ratings, Ex. VV.

**D.     SCI's Investigation and Plaintiff's § 3020-a Disciplinary Proceeding**

140.    On June 26, 2017, SCI issued a thirteen-page investigation report to Chancellor Fariña that substantiated the allegations regarding plaintiff's "Reply All" emails from November of 2013 through May of 2017.  *See* June 26, 2017 SCI Report, Ex. HH.

141.    The SCI Report detailed the contents of plaintiff's numerous "Reply All" emails to approximately 200 FHS staff over the course of approximately four (4) years, written requests from FHS Principals and staff members that repeatedly asked plaintiff to remove them from his email chains, Chancellor Farina's direct email to plaintiff that requested removal, as well as plaintiff's responses that he refused to stop sending "Reply All" emails.  *See* June 26, 2017 SCI Report, Ex. HH at 4-7, 9-11.

142.    The SCI Report also discussed SCI's interviews with more than twelve (12) complainants and recipients of plaintiff's "Reply All" emails, as well as plaintiff himself. *See generally*, June 26, 2017 SCI Report, Ex. HH.

143.    SCI found that plaintiff explicitly refused to remove numerous individuals from his mass emails, including: Principal Chin; Secretary Wright; Jaime Brown; April Volponi; Virgen Claudio; and Vincent Tobia, after they requested to not be included.  *See* June 26, 2017 SCI Report at 2, 4-5, 9-10, Ex. HH.

144.    The SCI Report concluded that plaintiff "had clear notice from two consecutive principals and several colleagues that his constant emails were harassing," and that plaintiff's "message to teachers who politely ask him to stop sending emails clearly intimidated others, who saw the futility of sending a similar request."  *See* June 26, 2017 SCI Report, Ex. HH at 12-13.

145.    The SCI Report further concluded that plaintiff's claims that his "Reply All" messages were pedagogically related was "disingenuous," as "[plaintiff] used them to air

personal grievances regarding DOE policies, administrators and his own personal matters." *See* June 26, 2017 SCI Report, Ex. HH at 13.

146.    SCI recommended that DOE take disciplinary action against plaintiff, including placing limitations on, or entirely disabling, plaintiff's ability to use to the "Reply All" function when responding to emails. *See* June 26, 2017 SCI Report,Ex. HH at 13.

147.    On September 18, 2017, Principal Chin issued plaintiff a disciplinary Letter to File for his inappropriate email use. *See* September 2017 Letter to File, Ex. WW.

148.    The disciplinary letter recounted the findings of SCI's investigation into plaintiff's emails, and concluded that plaintiff engaged in professional misconduct and harassment "by sending emails to all staff and consistently replying to all despite being advised to remove their names from the emails [plaintiff] sen[t]." *See* September 2017 Letter to File, Ex. WW at 2.

149.    The Letter to File concluded "you are hereby directed to refrain from 'replying all' to emails and are to refrain from including all staff in the emails you send." The letter advised plaintiff that his misconduct could lead to further disciplinary action, up to termination. *See* September 2017 Letter to FileEx. WW.

150.    On October 10, 2017, DOE referred disciplinary charges against plaintiff pursuant to Education Law § 3020-a. *See* § 3020-a Notice and Charges, Ex. XX.

151.    The charges alleged that during the 2015-16 and 2016-17 school years, plaintiff engaged in "misconduct, harassment, insubordination, conduct unbecoming his position and neglect of duty" during the February 15, 2017 PTA meeting; by continuously sending emails to colleagues who asked to be removed; sending the December 1, 2016 email making fun of

individual FHS staff members; and disregarding Principal Chin's directive to stop sending emails. *See* § 3020-a Notice and Charges, Ex. XX.

152. On October 16, 2017, DOE administratively removed plaintiff from his teaching duties, with pay, pending the outcome of his § 3020-a proceeding. *See* Administrative Reassignment Letters, Ex. YY.

153. Plaintiff was represented by private counsel in a 5-day evidentiary hearing held before Hearing Officer Donald T. Kinsella ("Hearing Officer Kinsella"), pursuant to Education Law § 3020-a, in June and July of 2018. *See* § 3020-a Opinion and Award, Ex. C at 1-2.

154. At this hearing, plaintiff was given the opportunity to present evidence, produce witnesses and cross examine witnesses produced by the DOE. *Id.*

155. Plaintiff argued during the hearing that he received negative evaluations and disciplinary letters at FHS in retaliation for expressing his discontent with Principal Chin's policies in meetings, emails, and SCI complaints. *See* § 3020-a Transcript, Ex. ZZ at 435. *See also* Exhibits EE, FF, CCC, DDD, and EEE

156. SCI Supervising Investigator Andre Jenkins testified about SCI's lengthy and detailed investigation into plaintiff's "Reply All" emails, which culminated in SCI recommending that plaintiff be disciplined. *See* § 3020-a Opinion and Award, Ex. C, at 7.

157. A.P.s Patricia Cuti and Tiffany D'Alessio, Secretary Terri Wright, Vincent Tobia and Keith Carvelas teachers testified about their complaints regarding plaintiff's emails and the difficulty they encountered in getting plaintiff to stop sending them. *See* § 3020-a Opinion and Award at 7-14, Ex. C.

158.    Plaintiff presented his former UFT Representative, Ms. Giglio, and five (5) other colleagues to testify on his behalf.  *See* § 3020-a Opinion and Award at 14-20, Ex. 3.

159.    On August 30, 2018, Hearing Officer Kinsella rendered a thirty-two (32) page decision finding plaintiff guilty of conduct unbecoming of his position for sending numerous "Reply-All" emails, particularly on December 1, 2016, to FHS staff and colleagues who asked plaintiff to stop.  *See* § 3020-a Opinion and Award at 23-30, Ex. C.

160.    The Decision discussed the ample evidence of plaintiff's misuse of the DOE email system, noting that when Principals Brown, Chin, and OSI advised plaintiff that he could use the "Reply-All" feature to respond to emails, plaintiff "drove a truck through that opening."  *See* § 3020-a Opinion and Award at 25, Ex. C.

161.    The Decision opined that "[b]eing a whistleblower, or exercising 1st Amendment rights, does not allow a teacher to disrupt meetings with administrators by taking over the agenda and doing all the talking," and that plaintiff "knew that some people did not want to hear from him long before any warning from investigators or discipline letters."  *See* § 3020-a Opinion and Award at 25-26, Ex. C.

162.    The § 3020-a Decision did not find just cause for plaintiff's termination, and instead recommended the following penalty: (1) a $500 fine payable immediately; and (2) mandatory completion of five (5) hours of professional development in workplace ethics and civility in social media and email usage provided by the DOE.  *See* § 3020-a Opinion and Award at 30-32, Ex. C.

Dated:        New York, New York
              March 4, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-318
New York, New York 10007
(212) 356-2078
lminicuc@law.nyc.gov

By:    /s/
       Lora Minicucci
       Assistant Corporation Counsel

Donna A. Canfield, Of Counsel.