No.: 18-CV-392 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SEUNG-YONG OK,

                                                    Plaintiff,

– against –

NEW YORK CITY DEPARTMENT OF EDUCATION; TYEE CHIN, FORMER PRINCIPAL OF FLUSHING HIGH SCHOOL, IN HIS OFFICIAL AND INDIVIDIUAL CAPACITY; and LUIS AGUIRRE AMAYA, ASSISTANT PRINCIPAL OF FLUSHING HIGH SCHOOL, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,

                                                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*

Attorney for Defendant
100 Church Street, Room 2-318
New York, New York 10007

*Of Counsel*:

Lora Minicucci
Donna A. Canfield

Tel: (212) 356-2078

Matter No.: 2018-005857

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ............................................................................................................................ 2

    POINT I .................................................................................................................... 2

    PLAINTIFF IS PRECLUDED FROM ARGUING THAT HIS PROSECUTION
    UNDER § 3020-A WAS RETALIATORY ............................................................ 2

    POINT II ................................................................................................................... 5

    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF RETALIATION
    UNDER THE FIRST AMENDMENT ................................................................... 5

        1.   "Engaged in constitutionally protected
        speech." ................................................................................................ 5

        a.   Speaking as a Citizen ............................................................... 6

        b.   Matter of public concern. ......................................................... 8

        c.   Causation. ................................................................................. 9

    POINT III ................................................................................................................ 13

    PLAINTIFF IS COVERED BY A CBA AND THEREFORE HE LACKS
    STANDING TO SUE UNDER §75-B. ................................................................. 13

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Burlington Northern and Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006)................................................................................................................10

Cohn v. Dep't of Educ. of N.Y.,
    697 F. App'x 98 (2d Cir. 2017) .............................................................................................7

Connick v. Meyers,
    461 U.S. 138 (1983)...............................................................................................................8

Corrado v. New York State Unified Court Sys.,
    CV 2012-1748 (DLI), 2014 U.S. Dist. LEXIS 130453 (E.D.N.Y. September
    15, 2014) .................................................................................................................................8

Cotarelo v. Village of Sleepy Hollow Police Dep't,
    460 F.3d 247 (2d Cir. 2006).................................................................................................11

Dorcely v. Wyandanch Union Free Sch. Dist.,
    665 F. Supp. 2d 178 (E.D.N.Y. 2009) ...................................................................................5

Ezekwo v. New York City Health & Hosps. Corp.,
    940 F.2d 775 (2d Cir. 1991)...................................................................................................8

Garcetti v. Ceballos,
    547 U.S. 410 (2006)......................................................................................................6, 7, 8

Gordon v. N.Y. City Bd. of Educ.,
    232 F.3d 111 (2d Cir. 2000).................................................................................................11

Kiernan v. Town of Southampton,
    No. 17-212-cv, 2018 U.S. App. LEXIS 12777 (2d Cir. May 17, 2018).................................11

Montero v. City of Yonkers,
    No. 17-76-cv,2018 U.S. App. LEXIS 12629 (2d Cir. May 16, 2018).......................................6

Morris v. Lindau,
    196 F.3d at 110 ....................................................................................................................10

Morrison v. Johnson,
    429 F.3d 48 (2d Cir. 2005)...............................................................................................5, 10

O'Leary v. Town of Huntington,
    No. 11-CV-3754 (JFB)(GRB), 2012 U.S. Dist. LEXIS 126086 (E.D.N.Y. Sep.
    5, 2012) ...................................................................................................................................9

Ross v. Breslin,
    693 F.3d 300 (2d Cir. 2012)..........................................................................................7

Smith v. City of New York,
    130 F. Supp. 3d 819 (S.D.N.Y. 2015)............................................................................9

Sousa v. Roque,
    578 F.3d 164 (2d Cir. 2009).......................................................................................6, 9

Thomas v. City of New York,
    953 F. Supp. 2d 444 ......................................................................................................9

Washington v. County of Rockland,
    373 F.3d 310 (2d Cir. 2004)........................................................................................11

Weintraub v. Bd. of Educ.,
    593 F.3d 196 (2d Cir. 2010)..........................................................................................8

Williams v. Town of Greenburgh,
    535 F.3d 71 (2d Cir. 2008)............................................................................................6

Zelnik v. Fashion Inst. of Tech.,
    464 F.3d 217 (2d Cir. 2006)........................................................................................10

**Statutes**

ADA ....................................................................................................................................9

Education Law 3020-a .......................................................................................................1

**Other Authorities**

First Amendment ....................................................................................................... *passim*

Federal Civil Procedure Rule 56.........................................................................................1

Local Civil Rule 56.1.........................................................................................................2

## PRELIMINARY STATEMENT

Defendants, the Board of Education of the City School District for the City of New York, operating as the New York City Department of Education ("DOE"), Tyee Chin, and Luis Aguirre Amaya, respectfully submit this Memorandum of Law in support of their motion for summary judgment pursuant to Federal Civil Procedure Rule 56. Summary judgment must be granted for defendants because the undisputed material facts demonstrate that plaintiff, a tenured DOE teacher, was investigated, removed, and disciplined for sending inappropriate emails to the staff at his school, and for continuing to do so despite repeated requests from various staff members to desist. The DOE rationally removed Plaintiff from the school pending the outcome of a hearing pursuant to Education Law 3020-a by the New York State Education Department Unit of School District Employer-Employee Relations. Plaintiff was charged with four specifications allegations of misconduct, insubordination, harassment, and creation of a hostile work environment. All specifications involved a serious lack of professionalism and poor judgment, and plaintiff remained in non-school position during the pendency of the disciplinary proceedings. Two of the specifications were substantiated, and plaintiff was ordered to pay a $500 fine and to attend five hours of professionalism courses. As such, plaintiff is precluded from claiming that the disciplinary proceedings brought against him pursuant to Education Law §3020-a were retaliatory, because these issues were already litigated at the disciplinary hearing, and two specifications were substantiated.

Plaintiff's reassignment from the classroom was not an adverse employment action, nor was it connected in any way to any protected status or activity. Rather, the record conclusively establishes that the DOE took reasonable and appropriate corrective steps to investigate plaintiff's actions after several complaints were made about him from staff at his

school. The evidentiary record substantiates these claims that plaintiff was involved in multiple reported incidents of misconduct.

Furthermore, Plaintiff cannot show that his reassignment from his teaching duties, which has not resulted in any materially adverse change in employment pending the resolution of the investigation and the disciplinary proceedings, was the product of illegal animus. Thus, plaintiff cannot make out a *prima facie* case of retaliation under the First Amendment. Similarly, plaintiff's Civil Service Law §75-b claim must also be dismissed as he is subject to a collective bargaining agreement ("CBA"), which provides for a grievance procedure to address any complaints in the workplace, including claims of retaliation. Plaintiff is thus unable to proceed under Civil Service Law § 75-b. Accordingly, summary judgment must be granted for the defendants and the Complaint dismissed in its entirety.

## STATEMENT OF FACTS

For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to defendant's Local Civil Rule 56.1 Statement ("Defs.' 56.1 Statement"), the Declaration of Assistant Corporation Counsel Lora Minicucci, dated March 3, 2020 ("Minicucci Decl."), and the exhibits annexed thereto.

## ARGUMENT

### POINT I

**PLAINTIFF IS PRECLUDED FROM ARGUING THAT HIS PROSECUTION UNDER § 3020-a WAS RETALIATORY**

The Second Circuit has held that Section 3020-a hearings are administrative adjudications that must be given preclusive effect. <u>Burkybile v. Board of Education of the</u>

Hastings-on-Hudson Union Free School District, 411 F.3d 306, 311-2 (2d Cir. 2005); see also Page v. Liberty Central School District, 679 F.Supp.2d 448, 452 (S.D.N.Y. 2010). "[F]or collateral estoppel to give preclusive effect to administrative agency findings, 'the issue sought to be precluded [must be] identical to a material issue necessarily decided by the administrative agency in a prior proceeding.'" Locurto v. Giuliani, 447 F.3d 159, 170-1 (2d Cir. N.Y. 2006).

Pursuant to New York Education Law § 3020-a Hearing Officer Kinsella adjudicated the multiple disciplinary charges against Plaintiff following a pre-hearing conference held on April 19, 2018 and five days of substantive hearings over a five-week period. Ex. C. Plaintiff, who was represented by counsel at his hearing, was afforded a full and fair opportunity to conduct direct and cross examination of witnesses and to present evidence and arguments. Thus, Plaintiff received an adequate, full and fair opportunity to litigate the substance of the disciplinary charges against him. Ex. C.

Following the hearing, Hearing Officer Donald T. Kinsella issued his decision, in which he found plaintiff guilty of conduct unbecoming the profession regarding Specifications 2a and 3 and ordered that Plaintiff pay a $500 fine and attend 5 hours of professional counseling on workplace ethics and civility. Ex. C at 32. As is relevant here, Hearing Officer Kinsella made the following factual determinations: (i) on December 1, 2016 plaintiff sent an email sent personally attacking his colleagues, and (ii) plaintiff repeatedly refused to remove staff from his Reply All emails when asked. Ex. C at 32. The facts found by Hearing Officer Kinsella at plaintiff's § 3020-a hearing, which resulted in a $500 penalty, must be accorded preclusive effect in this action. See e.g., Burkybile, 411 F.3d at 313 (finding the plaintiff is precluded from disputing the content of the substantiated charges or that they justified a penalty of a one year suspension without pay); see e.g. Fischer v. NYC Department of Education, 666 F.Supp.2d 309,

320 (E.D.N.Y. 2009) (finding that although the § 3020-a decision did not preclude the plaintiff's retaliation claim as such, the plaintiff could not dispute the content of the substantiated charges nor that they justified disciplinary action). Moreover, the Hearing Officer's findings substantiating Specifications 2a and 3 brought against plaintiff and determining that a fine of $500 was an appropriate penalty rebut any claim by plaintiff that the charges and the subsequent penalty were imposed for a retaliatory purpose. See e.g. Roemer v. Board of Education of City of New York, 150 Fed. Appx. 38, 39-40 (2d Cir. Sept. 23, 2005) (affirming the dismissal of the plaintiff's First Amendment retaliation claim as a matter of law since the finding at the § 3020-a hearing that the plaintiff had been terminated for cause rebutted any claim that the plaintiff's discharge was executed in retaliation for the exercise of any First Amendment right); c.f., DeCintio v. Westchester County Med. Ctr., 821 F.2d 111 (2d Cir. 1987) (precluding § 1981 and § 1983 claims based on State Division's finding that plaintiff was not terminated in retaliation for protected activity, but instead for misconduct). Accordingly, plaintiff is estopped from arguing that the initiation of the § 3020-a hearing was retaliatory and in violation of the First Amendment and 75-b of the New York Civil Service law. Based upon controlling case law, plaintiff is also collaterally estopped from claiming that the consequences of the hearing, namely, his removal from the school and his inability to re-apply for his position during the pendency of the action were retaliation for his speech in violation of the First Amendment. Thus, with respect to plaintiff's First Amendment retaliation claim, the only possible remaining purported retaliation actions are: four (4) letters to file; four (4) negative evaluations; his removal from school-wide emails[1]; and being told by another assistant principal to "sit down, and shut up" when plaintiff

---

[1] Although, the principal's secretary testified at plaintiff's § 3020-a hearing that she would still send him an email carbon copy, blind carbon copy, or forward the email with the recipient's names removed.

attempted to ask a question during a staff meeting. As discussed below, plaintiff is unable to establish that the alleged retaliatory actions were the result of participation in protected speech.

## POINT II

## PLAINTIFF IS UNABLE TO ESTABLISH A CLAIM OF RETALIATION UNDER THE FIRST AMENDMENT

Under federal law, a public employee alleging an adverse employment action in response to exercising his First Amendment rights must establish that: (1) he engaged in constitutionally protected speech; (2) he was subjected to an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision. Morrison v. Johnson, 429 F.3d 48 (2d Cir. 2005); Dorcely v. Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 205 (E.D.N.Y. 2009); see also Weintraub v. Bd. of Educ., 593 F.3d 196, 201 (2d Cir. 2010) (holding that, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance." (quoting Garcetti v. Ceballos, 547 U.S. 410, 420 (2006)). Thus, a public employee's speech is only protected to the extent that they are speaking as a citizen on a matter of public concern; speech made pursuant to an employee's official duties does not invoke First Amendment safeguards. Garcetti, 547 U.S. at 421. Here, plaintiff spoke as an employee on matters that were personal grievances about his conditions of employment. Furthermore, any discipline received by plaintiff was not based upon the content of his speech, but rather the disruptive way in which he chose to convey his opinions.

### 1. "Engaged in constitutionally protected speech."

To establish a retaliation claim under the First Amendment, a plaintiff must first show that their speech is constitutionally protected. Sousa v. Roque, 578 F.3d 164 (2d Cir. 2009);

Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008) (stating that "[r]egardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment."). "To determine whether or not a plaintiff's speech is protected, a court must begin by asking whether the employee spoke as a citizen on a matter of public concern." Sousa, 578 F.3d at 170 (internal quotations omitted) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). A plaintiff cannot state a First Amendment cause of action if they are not speaking as a citizen on a matter of public concern. Garcetti, 547 U.S. at 418 (citing Connick v. Meyers, 461 U.S. 138, 147 (1983)).

### a. Speaking as a Citizen

A public employee does not speak as a citizen for First Amendment purposes if their speech is made pursuant to their official duties. Montero v. City of Yonkers, No. 17-76-cv, 2018 U.S. App. LEXIS 12629, at *15 (2d Cir. May 16, 2018) (quoting Garcetti, 547 U.S. at 421). Where an employee's communication is "part and parcel" of the execution of their job, that speech is made pursuant to their official duties. Montero, 2018 U.S. App. LEXIS 12629, at *17 (citing Weintraub, 593 F.3d at 203). Rather than apply a "bright-line rule" to determine whether a public employee is speaking pursuant to her official duties, courts must analyze the "nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." Cohn v. Dep't of Educ. of N.Y., 697 F. App'x 98, 99 (2d Cir. 2017) (quoting Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012)).

In this case, plaintiff's instances of speech were clearly made pursuant to his official duties as a DOE teacher, as they involved: teacher surveys, whether the principal's new policies regarding teachers who had a passing rate of less than 75% were in violation of the CBA, and the curriculum of Algebra classes. See Exs. J and MM. Furthermore, plaintiff's § 3020-a charges

stemmed from speech that he made to his colleagues either from his work email, or at a PTA meeting at which he was present because he is a teacher at the school. In both instances, plaintiff could not have used those platforms unless he was a DOE employee. See.g. Ross, 693 F.3d at 306 (Payroll clerk's speech not protected where reporting pay irregularities was integral to her role as a payroll clerk, even though the concerns were brought outside the chain of command).

Plaintiff cannot establish that his speech is of a type that an ordinary citizen would or could engage in; in other words, his speech lacks a "civilian analogue." Although not dispositive, courts look to whether a public employee's communication has a relevant civilian analogue to determine whether it was made pursuant to their official duties, or as a citizen. See e.g. Garcetti, 547 U.S. at 423 (disposition memorandum prepared pursuant to an employee's duties as a prosecutor not afforded First Amendment protection in part because there is no civilian analogue to such a communication; "[w]hen a public employee speaks pursuant to employment responsibilities . . . there is no relevant analogue to speech by citizens who are not government employees."); Cohn, 697 F. App'x at 99-100 (teacher alerting school officials about suspected cheating is speech made pursuant to a teacher's official duties even though a private citizen could also write to state officials to complain in the same way; "the presence of an unofficial analogue does not necessarily mean the speech is protected."). The civilian analogue doctrine helps courts delineate statements that are made outside the scope of their duties as government employees, as opposed to constitutionally protected statements made by a citizen (i.e. political speech). Garcetti, 547 U.S. at 423. ("Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government."). Here, plaintiff's complaint about the internal policies of the school—raised in an

internal school email—falls outside of the method for speech available to public citizen. *See* Weintraub, 593 F.3d at 203-204 (internal communication made pursuant to employer's dispute-resolution policy was "not a form or channel of discourse available to non-employee citizens" and supports a finding that the speech was made pursuant to official duties). As such, in all of his instances of speech, plaintiff was speaking as a teacher at a DOE school and not as a citizen.

### b. Matter of public concern.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-148. A personal grievance alleging workplace discrimination is not a matter of public concern, Corrado v. New York State Unified Court Sys., CV 2012-1748 (DLI)(MDG), 2014 U.S. Dist. LEXIS 130453, *25 (E.D.N.Y. September 15, 2014) (citing Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993)), even if the grievance could be understood to implicate larger systemic issues. See Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 781 (2d Cir. 1991) (internal quotations omitted) ("the mere fact that one or two of [plaintiff's] comments could be construed broadly to implicate matters of public concern does not alter the general nature of her statements[,]" which were personal in nature and generally related to her own situation"). See also O'Leary v. Town of Huntington, No. 11-CV-3754 (JFB)(GRB), 2012 U.S. Dist. LEXIS 126086, at *24 (E.D.N.Y. Sep. 5, 2012) (dismissing First Amendment retaliation claim because plaintiff's request for reasonable accommodation under ADA was related to a personal grievance).

Here, plaintiff generally alleges that he was retaliated against for speech made when reporting his principal's comments about the teacher survey, complaining about new procedures regarding teachers who had a pass rate of less than 75%, and for assisting math teachers write a

letter complaining that geometry was being taught in algebra classes. Plaintiff's speech, however, is not a matter of public concern and is focused instead on matters personal to him—the teacher survey was done pursuant to his employment, his complaint about the new procedures for the pass rate related to the increase in paperwork that was, in his estimation, a violation of the CBA excessive paperwork policy, and the curriculum taught in math classes related to his employment as a teacher—and thus cannot be classified as being on a matter of public concern. Smith v. City of New York, 130 F. Supp. 3d 819, 832 (S.D.N.Y. 2015) ("A single public employee's attempt to 'redress personal grievances' lacks a 'broader public purpose.'") (internal citations omitted). See also Thomas v. City of New York, 953 F. Supp. 2d 444, 460 (dismissing First Amendment retaliation claim where there was "no evidence that plaintiff complained of systemic discrimination."); Sousa, 578 F.3d at 174 ("[S]peech on a private matter, such as an employee's dissatisfaction with her conditions of employment, does not pertain to a matter of public concern"). However, assuming arguendo that plaintiff engaged in protected speech, as argued below, there is no causal connection between the alleged speech and any adverse employment action. Furthermore, the defendants had legitimate business reasons for the actions taken against plaintiff.

### c. Causation.

In First Amendment retaliation claims, a plaintiff must show that their employer's retaliatory conduct was substantially motivated by the employee's constitutionally protected speech. Cotarelo v. Village of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir. 2006). ("[T]he causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action.") (citing Blum v. Schlegel, 18 F.3d 1005 (2d Cir. 1994)). Causation may be shown through direct evidence of retaliatory animus, Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000), or "indirectly, by

showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." Rivers, 176 F. Supp. 3d at 261 (citing Gordon, 232 F.3d at 117). However, "[p]laintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." Kiernan v. Town of Southampton, 2018 U.S. App. LEXIS 12777, at *9 (quoting Morris, 196 F.3d 102); Washington, 373 F.3d at 321 ("plaintiffs must aver some 'tangible proof' demonstrating that their protected speech animated [defendant's] decision to initiate disciplinary charges.")

As an initial matter, for the reasons argued above, plaintiff did not engage in speech protected by the First Amendment. Assuming for the sake of argument, however, that plaintiff's speech is protected, there is no causal connection between plaintiff's speech and any adverse employment action. Plaintiff began sending his Reply All emails about his dissatisfaction with school policies and procedures in the fall of the 2015-2016 school year. Exs. F, H, and I. Over a year passed between when plaintiff's alleged protected speech began and when he claims retaliatory actions were initiated against him. Furthermore, all the actions taken by the defendants were not in retaliation for plaintiff's speech but to address legitimate concerns that school administrators had with plaintiff's work, his interaction with other employees, and his refusal to adhere to school policies. First, there is no causal nexus between plaintiff's purportedly protected speech and his receipt of a negative performance ratings, since as stated above, over a year had passed since plaintiff engaged in email campaign. Gorman-Bakos v. Cornell COOP Extension of Schenectady County, 252 F.3d 545, 554-55 (2d Cir. 2001)(where there is a long time between the protected activity and the alleged adverse action there is an inference that there

is no causation)And, the overwhelming evidence establishes that defendants had legitimate concerns regarding plaintiff's performance. On December 13, 2016 plaintiff was observed in his class by Assistant Principal Amaya who produced a report. Ex. EE. Plaintiff was rated mostly effective in all categories except in the "managing student behavior" section for which he was given a "developing" rating. Id. As explained in the document, plaintiff was given this rating, because when AP Amaya entered the class, about 15 minutes into the lesson he noticed students on their phones and students with the hoods of their sweaters up. Id. Two days later, on December 15, 2016 plaintiff was rated by Principal Chin. Exhibit FF. Plaintiff was given three ineffective ratings and two developing ratings. Id. In the report there are extensive notes about why plaintiff received those ratings including problems with pacing, assessments of students understanding the material, plaintiff's failure to follow the "New Visions" curriculum, and to enter grades in the proper platform. Id. On April 26, 2017 plaintiff was again evaluated by Principal Chin where he received five ineffective ratings, two developing ratings, and one effective rating. Exs. H, EE, FF, CCC and DDD. Once again there are extensive notes regarding no clear lesson plan, student behavior (students arriving late and students sitting on their desks), and plaintiff's failure to enter grades on the designated platform. Id. On May 26, 2017, plaintiff was observed again by AP Amaya who issued him an evaluation where plaintiff received two developing ratings and two ineffective ratings, as well as three effective ratings. Ex. DDD Plaintiff received ineffective ratings in the "designing coherent instruction" category because he was not able to provide AP Amaya with a legible, coherent lesson plan that reflected common core curriculum when asked. Id. Plaintiff also received an ineffective rating in the "using questions and discussion techniques" and "using assessment in instruction" sections because there seemed to be no plan for assessing student comprehension of the lesson and there were no

questions contained in the lesson plan to engage students. Id. As such, there were legitimate pedagogical reasons, unrelated to plaintiff's speech for negative evaluations. These evaluations detail plaintiff's areas for improvement clearly and these are plainly a basis for which he would receive those ratings.

Next, plaintiff is unable to establish a nexus between his protected speech and the three letters he received to file. Plaintiff, however, had been speaking out against the administration for over a year prior to the time he received his first letter to file in February 2017. Ex. LL. Moreover, defendants had legitimate, non-retaliatory reasons for issuing the letters to file. His first letter to file—for failing to enter student grades in "Skedula" the online platform for student grades—was completed justified, since it was school policy that student grades should be entered into the online platform by a certain date so that students could have access to them. Plaintiff, however, failed to do this and as a result received a disciplinary letter. Plaintiff's second disciplinary letter, received on March 15, 2017 for his behavior at the Parent Teacher Association meeting on February 15, 2017, was issued after Principal Chin received multiple complaints from plaintiff's colleagues who were also present at the meeting. Ex. LL and MM. Plaintiff's third letter to file on June 26, 2017, came after plaintiff once again failed to enter information of failing students from his class on the designated platform. Ex. UU. Finally, plaintiff's fourth letter to file, received on September 18, 2017, was supported by the independent results of the SCI investigation into his email use after SCI received multiple complaints from plaintiff's colleagues that plaintiff had been sending harassing emails to staff despite their requests for this to stop. Ex.WW. Thus, the disciplinary actions taken by the DOE against plaintiff were a result of multiple, substantiated complaints from colleagues that

plaintiff's actions were disruptive, harassing, and interfered with their ability to do their jobs properly. Exs. AA and BB.

## POINT III

### PLAINTIFF IS COVERED BY A CBA AND THEREFORE HE LACKS STANDING TO SUE UNDER §75-b.

Civil Service Law § 75-b explicitly provides that only employees who lack the protection of a collective bargaining agreement ("CBA") grievance procedure may file an action under this statute. See Civ. Serv. L. § 75-b(3); Mottironi v. Axelrod, 133 A.D.2d 948, 948-49 (3d Dep't 1987); see also Krzesaj v. New York City Dept. of Educ., 16 CIV. 2926 (ER), 2017 WL 1031278, at *11 (S.D.N.Y. Mar. 15, 2017) (holding that, "Where an employee is subject to a collective bargaining agreement requiring mandatory arbitration, the employee's Section 75-b(2)(a) claim must be asserted at the arbitration."); Payson v Bd. of Educ. of Mount Pleasant Cottage School, USFD, 2017 U.S. Dist. LEXIS 154296 (S.D.N.Y. Sept. 20, 2017) (holding that if a collective bargaining agreement existed, it would preclude a § 75-b claim). "Where an employee is subject to a collectively bargained negotiated agreement which contains provisions preventing an employer from taking adverse personnel actions," and which contains a binding arbitration provision for all such allegations, the employee shall grieve his claims and may assert them only before an arbitrator. Civ. Serv. Law § 75-b(3). Only those employees not covered by a collective bargaining agreement may file suit in court to enforce their rights under § 75-b. Id.; see Munafo v. Metro. Transp. Auth., 2003 U.S. Dist. LEXIS 13495 (E.D.N.Y. Jan. 22, 2003)("An employee may bring suit under § 75-b in a court of competent jurisdiction only where a collective bargaining agreement does not substitute its own grievance procedure for the relief encapsulated by the statute."); Shaw v. Baldowski, 192 Misc. 2d 635 (Sup. Ct., Albany Co. 2002)(same).

Here, plaintiff, a member of the United Federation of Teachers, is covered by a CBA that contains a provision to prevent the DOE from taking adverse personnel actions, which, in the case, is the § 3020-a hearing. See CBA at Ex. 11 at 167. Plaintiff, therefore, is precluded from seeking relief under 75-b of the Civil Service Law. Indeed, in a case directly on point,, Krzesaj v. New York City Dept. of Educ., . the Southern District held that the plaintiff teacher was precluded as a matter of law from asserting a §75-b claim against DOE due to the CBA between the United Federation of Teachers and DOE, opining that. Krzesaj, at 12.

> The application was properly denied, respondent's inadvertent default notwithstanding, on the ground that petitioner failed to exhaust the administrative remedies set forth in the collective bargaining agreement ( *Matter of Plummer v Klepak, 48 NY2d 486, 423 N.Y.S.2d 866, 399 N.E.2d 897).* That this was the inexcusable fault of his union does not alter the situation. WHAT CASE IS THIS?  IF DOC CASE, I WOULDN'T HIGHLIGHT, SINCE DIFFERENT TITLE.   BUT YOU CAN CERTAINLY CITE TO IT IN SUPPORT

Ray v New York City Dep't of Corrections, 212 A.D.2d 387 (1st Dep't), app den., 85 N.Y.2d 810 (1995); see Schacht v. City of New York, 39 N.Y.2d 28 (1979). In the present case, plaintiff has a grievance procedure at his disposal where he can appeal the letters to file and bad evaluations. In fact, he used the grievance process to appeal one of his negative reviews in December 2016, that grievance was denied. Ex. GG. To the extent he has not used the grievance process for his other claims, he cannot now avail himself of § 75-b to make a claim due to his failure to exercise his contractual rights. Furthermore, as detailed in Point I, supra, these issues were raised during his 3020-a hearing, and Hearing Officer Kinsella has ruled that "[b]eing a whistleblower, or exercising 1st Amendment rights, does not allow a teacher to disrupt meetings with administrators by taking over the agenda and doing all the talking," and that plaintiff "knew that

some people did not want to hear from him long before any warning from investigators or discipline letters." See § 3020-a Opinion and Award at 25-26, Ex. C. Consequently, plaintiff is precluded as a matter of law from asserting a §75-b claim against DOE and this claim must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion for summary judgment be granted in its entirety, that the Complaint be dismissed with prejudice, that judgment be entered for defendants, and that defendants be granted costs, fees, and expenses together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 4, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-318
New York, New York 10007
(212) 356-2078
lminicuc@law.nyc.gov

By: /s/
Lora Minicucci
Assistant Corporation Counsel

Donna A. Canfield, Of Counsel.