UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


- - - - - - - - - - - -  X

SEUNG-YONG OK,                :
                                  18-CV-00392(BMC)
              Plaintiff   :


         -against-          :
                                  United States Courthouse
                          :       Brooklyn, New York
THE NEW YORK CITY
DEPARTMENT OF EDUCATION,   :
et al.,
                                  March 4, 2020
         Defendant.     :         5:00 p.m.

- - - - - - - - - - - -  X

                  TRANSCRIPT OF PRETRIAL CONFERENCE
               BEFORE THE HONORABLE BRIAN M. COGAN
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:            GLASS HARLOW & HOGROGIAN LLP
                              85 Broad Street
                              18th Floor, @WeWork
                              New York, NY 10004

                              BY: JORDAN F. HARLOW, ESQ.
                                  BRYAN D. GLASS, ESQ.

For the Defendants:           NEW YORK CITY LAW DEPARTMENT
                              100 Church Street
                              New York, NY 10007

                              BY: LORA MINICUCCI, ESQ.


Court Reporter:               Andronikh M. Barna
                              225 Cadman Plaza East
                              Brooklyn, New York
                              (718) 613-2178

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

1        THE CLERK:  Ok versus New York City Department of

2    Ed, et al.  Docket No. 18-CV-392.

3        Counsel, please state your appearances, starting

4    with the plaintiff.

5        MR. HARLOW:  Good morning, Your Honor.  My name is

6    Jordan Harlow on behalf of Glass Harlow & Hogrogian.  Sitting

7    here is my colleague, Bryan Glass, as well as the plaintiff,

8    Seung-Yong Ok.  We have our intern in the back as well.  Thank

9    you.

10       MS. MINICUCCI:  Good evening, Your Honor.  This is

11   Lora Minicucci for the Department of Education from the

12   New York City Law Department and for Tyee Chin and -- I forgot

13   the name of the last defendant, but for all of the DOE

14   defendants.

15       THE COURT:  Okay.  Your motion is denied.

16       MS. MINICUCCI:  Okay.

17       THE COURT:  You must have known that, right?  I

18   mean, I gave you leave to file the motion in 2018 and

19   literally the afternoon of the final pretrial conference, you

20   file a motion for summary judgment that is a foot thick.  What

21   were you thinking?

22       MS. MINICUCCI:  Your Honor, I just got this case two

23   weeks ago.  I just started in the division three weeks ago, so

24   I --

25       THE COURT:  Okay.  But then a letter to me saying I

1  just started, I have looked at the case, I have got a Garcetti

2  motion, you know, give me some time, Judge, I know it's

3  inconvenient.  But really, when I give leave in 2018 and then

4  I get it on the eve of the final pretrial conference, I can't

5  do that.  I can't do that.  You'll still have your Garcetti

6  motion.  I'm not costing you anything.  You'll make it at the

7  close of the plaintiff's case.

8          MS. MINICUCCI:  Okay, Your Honor.

9          THE COURT:  Okay.  Now, with regard to the

10 plaintiff, it really seems to me like you guys don't want to

11 go to trial.  I mean, your witness and exhibit list remains as

12 trial deadening as your first submission.  I mean, really, you

13 think you can list Alcoff, Accardi, Gibson, Farina?  You're

14 going to list these witnesses and tell me you're serious about

15 having a trial?  What are you doing?

16         MR. HARLOW:  Your Honor, we have significantly cut

17 down our list.

18         THE COURT:  Well, I don't have it cut down, do I?

19         MR. HARLOW:  It was a recent cutdown.

20         THE COURT:  I'm sorry, speak louder.

21         MR. HARLOW:  It was a recent cutdown.  We only came

22 to this decision --

23         THE COURT:  Okay.  I'm going to call off names, and

24 you tell me who's cut.

25         Alcoff, right?  He's cut?

1          MR. HARLOW:  We actually would like to keep Alcoff

2     in.

3          THE COURT:  We'll talk about it.

4          Accardi?

5          MR. HARLOW:  Accardi, we cut.

6          THE COURT:  Gibson?

7          MR. HARLOW:  We cut Gibson.

8          THE COURT:  Farina?

9          MR. HARLOW:  We would like Farina for a very limited

10    purpose.

11         THE COURT:  Okay.  Giglio?

12         MR. HARLOW:  Yes, we would like to keep her.

13         THE COURT:  Multiple school teachers, 13 teachers.

14         MR. HARLOW:  There's three teachers we would like to

15    keep.

16         THE COURT:  Which are the three that you want to

17    keep?

18         MR. HARLOW:  I apologize ahead of time for

19    butchering the name.

20         THE COURT:  You have to speak louder.

21         MR. HARLOW:  The first is Susan Kendzierski.

22         THE COURT:  Yes.

23         MR. HARLOW:  Next is Natalie Berhumoglou.

24         THE COURT:  Yes.

25         MR. HARLOW:  And then Christopher Marzian.

1          THE COURT:  Okay.  And the rest are cut.

2          MR. HARLOW:  Yes.

3          THE COURT:  Okay.  Michael Dorn?

4          MR. HARLOW:  We would like Investigator Michael Dorn

5   an Investigator Christina Bunch.  The rest of the

6   investigators --

7          THE COURT:  Okay.  May is out?

8          MR. HARLOW:  Yes.

9          THE COURT:  Okay.  Now let's talk about the

10  superintendent of schools.  What are you going to ask him and

11  what is he going to say?

12         MR. HARLOW:  For Superintendent Alcoff, we think

13  he's relevant for several reasons.  One, he can testify about

14  the conversation with Principal Chin as to why he was removed,

15  as well as the investigations and previous conversations as to

16  why Mr. Chin was ultimately moved, which I think goes towards

17  the principal's credibility, as he did -- as he was asked

18  these questions during his deposition.

19         THE COURT:  Hold it.  You got to back me up a

20  little.

21         MR. HARLOW:  Sure.  So --

22         THE COURT:  Wait.  Chin was the plaintiff's

23  supervisor, right?

24         MR. HARLOW:  Yes.

25         THE COURT:  Okay.  And you're saying Alcoff fired

1  Chin?

2         MR. HARLOW:  He removed him from the school.

3         THE COURT:  Why does he say he removed him from the

4  school?

5         MR. HARLOW:  Well, that's a --

6         THE COURT:  Well, you did his deposition?

7         MR. HARLOW:  Why does Chin say?  Chin says that it

8  was due to a difference of philosophy.

9         THE COURT:  What does Alcoff say?

10        MR. HARLOW:  We did not depose Alcoff.

11        THE COURT:  So you want to call him without having a

12 clue what he's going to say, the superintendent of the

13 New York City public school system, and say to him, why did

14 you fire him?

15        MR. HARLOW:  Well --

16        THE COURT:  Here's what I'm going to do:  You can

17 take his deposition, and we'll see if it's necessary, for one

18 hour.  If this turns out to be a wild goose chase, you and the

19 plaintiff are going to be sanctioned in the amount of $10,000.

20 Okay?  Because I do not believe Mr. Alcoff has anything to add

21 to this case.  But if you want to put your money where your

22 mouth is, you may do so.  One hour.  Find out what he's got.

23        MR. HARLOW:  Okay.

24        THE COURT:  Tell me about Carmen Farina.

25        MR. HARLOW:  So the reason we'd like to call Carmen

1    Farina is, there were several e-mails in which she referenced
2    actions that Principal Chin was taking.  For example, at one
3    point, Principal Chin --
4              THE COURT:  I don't understand.  Who is on trial
5    here?
6              MR. HARLOW:  Well, it goes towards motivation of
7    Chin, why he would retaliate against -- towards Ok.
8              THE COURT:  Why would his problems with Farina or
9    Alcoff have anything to do with his problems with the
10   plaintiff?
11             MR. HARLOW:  Because his problems with Farina were
12   being cause -- he believed -- we believe he believed has been
13   caused by Ok.
14             THE COURT:  By what?
15             MR. HARLOW:  By Mr. Ok.
16             THE COURT:  In other words, it's your position that
17   the reason Chin was fired -- sorry.  Yes, the reason that Chin
18   was reassigned was because of the way he had treated the
19   plaintiff; is that right?
20             MR. HARLOW:  It's our position that Mr. Ok, through
21   his communications and through his complaints, got the
22   attention of Carmen Farina.  And --
23             THE COURT:  How do you know that?
24             MR. HARLOW:  There's several e-mails.  There's at
25   least one that was maintained in the order in which there's a

1  communication from Carmen Farina. There's one in which she's

2  communicating with Dorita Gibson. There's another one where

3  she's communicating directly with Mr. Chin.

4          THE COURT: What is she saying?

5          MR. HARLOW: In one of them, she's asking if Mr. Ok

6  was reprimanded based on his communications.

7          THE COURT: Do you have those marked as exhibits?

8          MR. HARLOW: I do, Your Honor.

9          THE COURT: What exhibit numbers are they, so I can

10 look at them?

11         MR. HARLOW: Just give me one moment, please.

12         I believe they're 30 and 31. I just have to

13 double-check, Your Honor.

14         THE COURT: Why didn't you try to take some of these

15 depositions during discovery?

16         MR. HARLOW: Part of it had to do with limited

17 resources.

18         THE COURT: Suddenly you found the resources?

19         MR. HARLOW: Not exactly.

20         So it would be Exhibit 30 and 31.

21         THE COURT: Okay. So, in other words, what happened

22 is, when the plaintiff was sending out his mass e-mails to

23 everybody in the system, one of the people he included was

24 Ms. Farina, and she responded to the e-mail by saying, "Who is

25 this person? Written up?" And on that basis, you intend to

1   call her as a witness at this trial to say the reason that she

2   reassigned Chin was why again?

3          MR. HARLOW:  Well, it goes towards Chin's motivation

4   to target --

5          THE COURT:  Tell me what she's going to say.

6          MR. HARLOW:  Well, we would like to know if she had

7   a communication with Chin.  He denies that.  Excuse me.

8   Mr. Chin denies that he had a communication with Farina about

9   this.

10         THE COURT:  And what do you have that shows he's

11  fabricating?  Have you got an e-mail between him and Farina?

12         MR. HARLOW:  We do not.

13         THE COURT:  This is like a fishing expedition in a

14  case that discovery has been closed in for two years.

15         MR. HARLOW:  I apologize, Your Honor.

16         THE COURT:  Okay, that is not enough of a showing to

17  me to warrant calling senior, current, and former

18  superintendents of the New York City school system, so I'm

19  going to strike them from the witness list.

20         You better have something more than speculation and

21  hope you can dig something up at this stage, because if that's

22  your case, it's not great.  This is simply a contest between

23  the plaintiff and Chin as to who was unreasonable.

24         Okay.  Giglio.  You don't have a deposition on her

25  either, right?

1    MR. HARLOW:  She's a voluntary witness.  She's a

2  friendly witness.

3          THE COURT:  Friendly witness.  Okay.

4          MR. HARLOW:  Actually, the rest of the witness are.

5          THE COURT:  Okay.

6          MR. HARLOW:  Well, we believe will be friendly.

7          THE COURT:  Well, not the SCI and OSI investigators,

8  right?

9          MR. HARLOW:  Well, Christina Bunch was -- one of

10  them investigated Chin and was in correspondence with Mr. --

11          THE COURT:  Okay.  Now, I have objections to those

12  witnesses from the defense, but I'm not seeing a reason, now

13  that the list has been narrowed to three teachers and two

14  investigators, why that's a problem.

15          MS. MINICUCCI:  Well, Your Honor, to the extent that

16  the three teachers are -- we don't feel that they're

17  necessary.  I think their testimony is going to be

18  duplicative.

19          THE COURT:  Of what?  Because we have cut out all

20  the witness -- of each other?

21          MS. MINICUCCI:  Of each other.

22          THE COURT:  Yes.

23          MS. MINICUCCI:  They all received the same group

24  e-mails from everybody.  They're friendly to the plaintiff.

25  They're all going to say, well, I thought they were funny.

1  So --

2       THE COURT:  Okay.  Well, I'm not going to rule on

3  cumulativeness at this stage.  I need to hear the evidence to

4  determine if it's cumulative.  I may well block them if I

5  think that it is.  But I can see a reason why the plaintiff

6  might want to show this wasn't just one isolated teacher who

7  had this reaction, there were others as well.  The case may

8  get stronger with more people saying the same thing.  We'll

9  see at trial if it does.

10      Okay, so the teachers are fine.  You're still in --

11  you're objecting to Dorn and to Bunch?

12      MS. MINICUCCI:  So our objections to the

13  investigators for the SCI and OSI cases, to the extent that

14  they relate to the 3020-A hearing should be precluded.  There

15  was a trial, 3020-A.  There were determinations based -- made.

16  And so those witnesses, their credibility has already been

17  assessed.  And the --

18      THE COURT:  Not by the jury here.

19      MS. MINICUCCI:  No, but in an administrative hearing

20  where those issues in terms of whether the e-mails and the

21  discipline relating to the e-mails was proper, they testified

22  there, and their credibility was assessed and what they

23  thought about the case was assessed, and so it's the DOE's

24  position that they should be precluded.

25      THE COURT:  Well, what effect do the defendants

1   think the 3020-A hearing has or the decision in the 3020-A

2   hearing has on this case?

3            MS. MINICUCCI:  It has a preclusive effect.

4            THE COURT:  But what does it preclude?

5            MS. MINICUCCI:  It precludes any discussion of the

6   issues that were already decided.

7            THE COURT:  It's an evidence-limiting decision?  It

8   precludes the plaintiff from putting in evidence?

9            MS. MINICUCCI:  It precludes the plaintiff from

10  bringing up issues that were already decided.  And so if these

11  witnesses are just testifying as to the investigation that

12  they did that led to the 3020-A hearing and they're just

13  discussing issues that were in the 3020-A hearing, then their

14  testimony is irrelevant.

15           THE COURT:  I hate to say this, but don't you need a

16  motion in limine to exclude them on the grounds that here are

17  the issues that are established by the 3020-A?

18           MS. MINICUCCI:  Your Honor, it wasn't my motion, but

19  I'll happily make a motion in limine to do that.

20           THE COURT:  If you want to do that, you can.

21           MS. MINICUCCI:  Okay.

22           THE COURT:  I'm not sure you should, because I might

23  start hearing from them -- well, no, I think you should,

24  because I have got to know if you're right.  And there are

25  issues that the plaintiff is prohibited from proving because

1  he lost them at the hearing.  I want from you a list of those

2  issues that you think are precluded, because as I recall the

3  3020-A, it kind of gave a little to both sides.  Do you

4  disagree with that?

5          MS. MINICUCCI:  I would say that's a fair

6  assessment.

7          THE COURT:  Okay.  So he's precluded as to some

8  things and you're precluded as to some things, right?

9          MS. MINICUCCI:  I'm not sure if there is anything

10  that the -- from the 3020-A hearing that we would try to

11  dispute.

12          THE COURT:  Okay.  That's fine.  But you let me know

13  what evidence is excluded that the plaintiff wants to put in

14  based on the witness list and the exhibits by the 3020-A

15  decision.

16          MS. MINICUCCI:  Okay.

17          THE COURT:  Can you give me the law that says that,

18  that I can do that?  Because when I've seen 3020-A or oath

19  hearings given a preclusive effect, it's been in the context

20  of the plaintiff's termination being sustained and then the

21  3020-A decision becomes a basis for granting summary judgment.

22  You're not contending that here?

23          MS. MINICUCCI:  No, but in the same vein, the fact

24  that there were things that were substantiated in the 3020-A

25  hearing means that those issues have already been resolved and

1    so that should have a preclusive effect.

2          THE COURT:  Okay.  And when we're talking about

3    preclusive, are we talking about res judicata or collateral

4    estoppel, or both?

5          MS. MINICUCCI:  Collateral estoppel.

6          THE COURT:  Okay.  Okay, you'll brief that.

7    Quickly, please.

8          MS. MINICUCCI:  Yes, Your Honor.

9          THE COURT:  Okay.  So those are the plaintiff's

10   witnesses.

11         The defendant's witnesses, I don't understand the

12   plaintiff's objections at all, really.  I mean, at best, it

13   seems to me the objections of the plaintiffs have stated to

14   these three witnesses that the defendant has listed, as

15   opposed to the 17 that the plaintiff listed.  It all goes to

16   the weight of their testimony.  You can cross-examine them on

17   this stuff.  It doesn't go to admissibility.  Tell me why any

18   of this makes the testimony inadmissible?  The defendant says

19   Tobia is a colleague who complained about his behavior to the

20   defendants and complained about the plaintiff's e-mails.  He's

21   going to talk about his communications with the plaintiff,

22   complaints that he made about the plaintiff, and his testimony

23   at the 3020-A.  Why can't he do that?  You know, when you do a

24   pretrial order, it's the same good-faith obligation as a

25   pleading.  You sign your name to something and there's no

1   good-faith allegation for an objection, there are consequences

2   to that.

3          Are there any of these three witnesses, Asher or

4   Benvisto, B-e-n-v-i-s-t-o, who you really think shouldn't be

5   allowed to take the stand?

6          MR. HARLOW:  Your Honor, regarding Vincent Tobia,

7   similar to those arguments, again, this case is limited scope

8   in terms of --

9          THE COURT:  Yes, it is.  You're the one trying to

10  make it bigger.

11         MR. HARLOW:  Well --

12         THE COURT:  He's going to talk about his

13  conversations with plaintiffs and his complaining to the

14  plaintiff about these e-mails.  What's wrong with that?

15         MR. HARLOW:  Because we feel that's outside the

16  scope of this case.  I mean, this case comes down to why

17  Mr. Chin was motivated to take the --

18         THE COURT:  Does it not bear on Mr. Chin's

19  motivations?  It has no tendency to show if there are other

20  people who are very upset by plaintiff's e-mails?

21         MR. HARLOW:  Well, Mr. Chin can testify that he had

22  this conversation.  We don't see --

23         THE COURT:  How could he do that?  That would be

24  hearsay.

25         MR. HARLOW:  He stated, I spoke to this individual.

1    THE COURT:  Yes?  And?

2    MR. HARLOW:  And this was the effect that this

3 individual has had on me.

4    THE COURT:  Wouldn't you object on the ground of

5 hearsay?

6    MR. HARLOW:  If he's saying that based on what this

7 individual says was true, yes, but regarding the effect it had

8 on Mr. Chin.

9    THE COURT:  Look, I think if the defendants want to

10 have firsthand testimony instead of hearsay, they're entitled

11 to that, so I'm overruling the objections of these three

12 witnesses.  That doesn't mean that if they say something that

13 is irrelevant or that there's no foundation for them to say

14 that you can't object, of course you can.  But I'm certainly

15 not seeing any reason to exclude them all.

16    Okay.  Those are the witnesses.  Now let's go on to

17 the exhibits.

18    Why is the New York Post article not hearsay?

19    MR. HARLOW:  Your Honor, could you direct me to

20 which exhibit number you're referring to?

21    THE COURT:  Your Exhibit 4.  It's a newspaper

22 article.

23    MR. HARLOW:  We do agree that the contents within

24 are hearsay, but Mr. Chin, in his deposition, did testify that

25 he was aware of it, that this influenced his later perception

1  that Mr. Ok was an individual who would report things to

2  newspapers.  So despite the fact that there was no admission

3  by Mr. Ok that he was later the anonymous source, this clearly

4  had an impact on Mr. Chin's impression of Mr. Ok during the

5  two relevant school years.

6          THE COURT:  Okay.  Unless the defendants give me a

7  reason not to, I'll allow the article with a limiting

8  instruction that the defendants will be obligated to give me

9  and to ask for.

10         Anything else on that?

11         MS. MINICUCCI:  No, Your Honor.

12         THE COURT:  Okay.  Then we have the e-mails from

13 Chin, December 2nd to 5th.  What's wrong with all these -- oh,

14 I see.  A lot of them are plaintiff's own statements.  I see.

15 Okay.

16         MR. HARLOW:  Your Honor, if I may?

17         THE COURT:  Yes.

18         MR. HARLOW:  My understanding is that defendants

19 were objecting to these e-mails based that it wasn't -- that

20 they're not complete.  But based on my review of the e-mails,

21 it did seem --

22         THE COURT:  Is there anything else as to plaintiff's

23 proposed Exhibit 7 that the defendants need to have in, in

24 order to make it complete?

25         MS. MINICUCCI:  No, Your Honor, I think it's fine.

1    THE COURT:  Okay.  I'm going to say the same thing

2  to the defense.  And I know you're new on the case, so I'm

3  less inclined to take it out on you, but if you object in a

4  pretrial order, you have got to have a basis for it.  Let me

5  ask you, are there any other objections that you know that you

6  want to withdraw?

7    MS. MINICUCCI:  Your Honor, I briefly looked at

8  this.  I think there are only a few exhibits where we objected

9  as to completeness, and one of them I think is 31, the e-mail

10  from Chancellor Farina.

11    THE COURT:  That's not disputed.

12    The next one I have disputed is 30.  That's the one

13  from Chancellor Farina saying, "Who's this person?  Written

14  up?"  I can't believe the plaintiff wants to introduce that

15  e-mail which says that what he was doing with these mass

16  e-mails was so disturbing, it even got to the Chancellor and

17  she's wondering what's going on.  But if the plaintiff wants

18  it in, why would the defendant object?

19    MS. MINICUCCI:  We would just like to have the

20  e-mail that was originally sent to her, like what she's

21  reacting to.

22    THE COURT:  Okay, it's in there.  I just saw that.

23  It's part of 30.  When she got the copy of the mass e-mail,

24  that's when she responded, "Who is this person?"

25    MS. MINICUCCI:  I don't have it in 30.  It wasn't in

1    my -- I just have her reaction.  I don't know if --

2         THE COURT:  Well, plaintiff gave me a more complete

3    book than they gave you.

4         MS. MINICUCCI:  Maybe it just got cut out.

5         THE COURT:  Oh.  No, you're right.  It's just that

6    there are so many names because plaintiff -- no, no, no, it's

7    here.  It's here.

8         MS. MINICUCCI:  Okay.  So I somehow got that page

9    deleted or something.  I only had one page in 30.

10        THE COURT:  Well, mine is Bates numbers -- there's

11   two sets of Bates numbers, but it looks like PO-269 and 520

12   through PO-275 and 526.  Those are both sets of Bates numbers.

13        MS. MINICUCCI:  I have 528 and -- the only page I

14   have is 528 and PO-277.

15        THE COURT:  All right.  You'll take another look at

16   those and write me a letter if you still have a problem.

17        Okay.  You have the same complaint on Plaintiff's

18   35, that it's incomplete.  I mean, the plaintiff really -- I'm

19   trying to understand this.  The plaintiff blankets everybody

20   in the school system with these e-mails.  Then there's a few

21   people who look at this and go, what is he doing?  And pass

22   that along.  And the plaintiff wants those in evidence, right?

23   I'm going to say yes, the plaintiff wants those.  They're

24   going into evidence, it's fine.

25        MR. HARLOW:  Yes, Your Honor.  Okay.

1    THE COURT:  It's fine.  But I'm not sure what the

2  defendant says is incomplete.  Again, I seem to have -- you

3  know, the first e-mail in the string is from the plaintiff.

4    MS. MINICUCCI:  The defendant withdraws the

5  objection on Exhibit 35.

6    THE COURT:  Okay.  That seems wise.

7    Fifty-four.  I have a hearsay and double hearsay

8  objection.  I've got to figure out who's saying who to what or

9  saying what to who.  It does seem like she's repeating a lot

10  of things she heard in a meeting, and some of the people in

11  the meeting are repeating things they heard from some other

12  source, so why isn't that hearsay upon hearsay?

13    MR. HARLOW:  Your Honor, we would agree that it is

14  hearsay upon hearsay.

15    THE COURT:  I can't understand you.  Say it more

16  clearly.

17    MR. HARLOW:  We would agree with you.

18    THE COURT:  Okay.  So that's withdrawn.

19    Okay.  Next, 55.  Oh, that's the audio.  This is

20  where the plaintiff allegedly spoke out against the school and

21  was told to shut up.  And the plaintiff wants that in, in

22  front of this jury.

23    MR. HARLOW:  Your Honor, we would be -- to the

24  extent we --

25    THE COURT:  You don't have to defend it.  I'm

1   inclined to do it.  I mean, I'm not going to give you the

2   whole 54-minute clip.  That's too long.  But if you want to

3   put in some excerpt, some reasonable excerpt.  I mean, did you

4   really think the jury is going to sit here and listen to one

5   hour of the plaintiff's speech at the meeting?

6           MR. HARLOW:  No, Your Honor.

7           THE COURT:  Really, I need the parties to put in

8   more care to this case than I'm seeing so far.

9           The hearsay objection is overruled because the

10  plaintiff is not offering this for the truth of what he's

11  saying.  I guess he's offering it, and the plaintiff will

12  correct me if I'm wrong, to show how much he annoyed people.

13  Is that it?

14          MR. HARLOW:  No, Your Honor.  It's used essentially

15  because this was what was -- what transpired at the PTA

16  meeting was a specification 3020-A.  And there's been

17  different renditions given as to what was actually said, so

18  it's used to the extent that there's a difference in testimony

19  to a lot of what people said.

20          THE COURT:  Right.  Okay.  Cull it down from

21  54 minutes and you can have it.  Okay?

22          MR. HARLOW:  Thank you.

23          THE COURT:  Okay.  Then we have got another New York

24  Post article at 65, Plaintiff's 65.  Why is this being offered

25  by the plaintiff?

1    MR. HARLOW:  Your Honor, for the same purposes --

2  well, for similar purposes as Exhibit 4.  Mr. Chin testified

3  that he suspected Mr. Ok of being the anonymous source of this

4  article, and he contacted the --

5    THE COURT:  Okay.  I'll let it in on that basis.

6  The defendant can, again, propose a limiting instruction, if

7  the defendants want to do that.

8    Okay.  Then 70 is this very long Hello Flushing

9  Family e-mail chain.  And the defendant says something is

10  missing, but it looks complete to me again.  I'll give just

11  the first set of the Bates numbers:  PO-788 through 795.  If

12  the defense thinks there's something missing, send me in that

13  letter you're going to send me what it is that's missing.

14    MS. MINICUCCI:  Yes, Your Honor.

15    THE COURT:  Looks complete to me.

16    Okay.  Then 73.

17    MR. HARLOW:  Your Honor, we will be withdrawing

18  Exhibit 73.

19    THE COURT:  Exhibit 73 is withdrawn.

20    81.  Again, I've got a completeness objection, but

21  it looks complete to me.  Defendants will send me a letter

22  telling me what is missing, if there is anything missing.  The

23  Bates numbers I have for this one -- this one is not Bates

24  stamped, but it is only a two-page letter -- wait.  Yes, a

25  two-page letter dated September 18, 2017 from Mr. Chin to

1    Mr. Ok.  Seems okay to me.

2         Okay.  And 87 is the vacancy postings.  What does

3    the plaintiff contend this is offered to show?

4         MR. HARLOW:  Your Honor this goes towards damages,

5    as Mr. Ok was not able to apply for these positions while he

6    was -- had pending charges.

7         THE COURT:  Oh.

8         MR. HARLOW:  And pending investigations.

9         (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Continuing.)

2          THE COURT:  Okay.  That's okay.

3          And then 89 is another audio.  This one is half an

4   hour long between Mr. Chin, and the plaintiff, discussing

5   various issues.

6          Can you tell me, isn't there a way to narrow this?

7          MR. HARLOW:  Your Honor, I don't anticipate this

8   recording would be necessary unless for rebuttal purposes or

9   for impeachment purposes.

10          THE COURT:  Okay.  That's okay.  Then I'm not going

11  to deal with it.  Okay.  That's good.

12          Now that we have culled some of plaintiff's

13  witnesses, I'm beginning to understand how we can get down to

14  a reasonable trial length that the parties have estimated.

15          And let's see, the parties are estimating three to

16  five days.  That still sounds good?  Sounds good to me.

17          MR. HARLOW:  Yes, Your Honor.

18          MS. MINICUCCI:  Yes.

19          MR. HARLOW:  Yes, Your Honor.

20          THE COURT:  Okay.  Monday?

21          MS. MINICUCCI:  This Monday?

22          THE COURT:  It's next Monday.  Any reason why not?

23          MS. MINICUCCI:  Your Honor, I have to make sure all

24  the witnesses are available and contact them.

25          THE COURT:  You've got three witnesses.

1          MS. MINICUCCI:  I still have to make sure they're

2     available.  It's Wednesday evening.

3          THE COURT:  Thank you.  I'm going to carry you as

4     backup.  Well, yeah.  I'm going to carry you as backup to pick

5     a jury on 4-27.  That's a Monday.  But the odds are, I'll be

6     on trial that week and if I am, then we'll have the magistrate

7     judge pick your jury that Monday and convene trial on May 4th.

8          If that doesn't work -- in fact, let's assume that's

9     not going to work.  Let me retract that.  We will have the

10    magistrate judge pick a jury on 11th, and then we'll go right

11    to trial.

12          MR. HARLOW:  Okay.

13          MS. MINICUCCI:  Okay.

14          MR. HARLOW:  Thank you, Your Honor.

15          THE COURT:  What else do we need to talk about?

16    Again, I'm going to keep the defendant's brief on *Garcetti* and

17    I'm going to rule on it at the close of plaintiff's case.

18          MS. MINICUCCI:  Okay, Your Honor.

19          THE COURT:  Okay.  Anything else?

20          MR. HARLOW:  Your Honor, I guess the only question

21    would be regarding defendant's motion on the collateral

22    estoppel effect.  We have a --

23          THE COURT:  I'm not going to put a firm schedule on

24    it.  She's going to get it to us relatively quickly, and it is

25    going to specify exactly what evidence or what factual

1    contentions the plaintiff is not permitted to use evidence to

2    prove in light of the 3020-a, and then the legal authority

3    that for that.

4              MR. HARLOW:  (Nods head affirmatively.)

5              THE WITNESS:  But you know, she'll have it to us in

6    two to three weeks.  That's enough time.

7              MR. HARLOW:  Thank you.

8              THE COURT:  Okay.  Anything else?

9              MR. HARLOW:  Nothing.

10             THE COURT:  Okay.  Nice to see you all.  See you

11   soon.

12             MR. HARLOW:  Thank you.

13             (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25